THOMAS R. PULLIS ET AL., Respondents, *v.* HENRIETTA ROB-
ISON ET AL., Appellants.

### April 16, 1878.

1. An administrator is not a proper party to a proceeding to set aside a volun-
tary conveyance made by his intestate. A bill for that purpose should be
filed by those defrauded by the conveyance.

2. A bill by a creditor to set aside a voluntary conveyance becomes a specific
lien as soon as filed, and the creditor who first files his bill obtains a
priority.

3. An insurance policy on the husband's life, effected without fraud, for the
benefit of the wife, and payable to her, is not fraudulent as to creditors,
and does not become the creditors' property by the husband's subsequent
insolvency; and if, after such insolvency, the husband pays premiums
with money that ought to be applied to the payment of his debts, the
creditors, after the husband's death, are entitled to receive from the pro-
ceeds of the policy only the premiums paid by the deceased after his
insolvency, with interest.

4. A husband, though insolvent, may withdraw annually from his creditors
$300, to be used in effecting and keeping alive insurance on his life for his
wife's benefit.

5. In determining whether a gift is in fraud of creditors, the question is not
whether the donor knew himself to be insolvent, and intended to defraud,
but whether he was solvent.

APPEAL from St. Louis Circuit Court.
*Affirmed.*

CLINE, JAMISON & DAY, for plaintiffs : The legal repre-
sentatives of the insured cannot sue upon the policy where
it is payable to his widow ; but creditors can, by bill, in the
same manner that they follow any other property their
debtors have put out of their possession. — *McCord* v.
*Noyes*, 3 Bradf. 139 ; *Meny* v. *Freeman*, 44 Mo. 518 ;
*Brown* v. *Finley*, 18 Mo. 375 ; *McLaughlin* v. *Mc-
Laughlin*, 16 Mo. 242 ; Bliss on Ins. 497, 505, 506, 553.
The creditors, or any one of them, may file a creditor's
bill, and the creditor who first files his bill obtains a
priority. — *George* v. *Williamson*, 26 Mo. 193 ; *Bank* v.
*Burke*, 4 Blackf. 141 ; *Hills* v. *Sherwood*, 48 Cal. 393.
The premiums being over $300 annually, no portion of the

policy is free from the claim of creditors. — Bliss on Ins., sec. 322 ; *Insurance Co.* v. *Brant*, 47 Mo. 425.

JAMES M. LORING, for plaintiff Matlack: The annual premium paid after the insolvency of the insured being in excess of $300, no portion of the proceeds of the policies are exempt from the claims of creditors. — Bliss on Ins., sec. 323 ; *Insurance Co.* v. *Brant*, 47 Mo. 425. " Creditors may follow and recover a policy assigned by an insolvent debtor in trust for his wife." — Bliss on Ins., sec. 353 ; *McCord* v. *Noyes*, 3 Blackf. 139 ; 23 La. An. 455.

RUDOLPH SCHULENBURG, for plaintiffs Schulenburg & Boeckler, cited : *Brown* v. *Finley*, 18 Mo. 375.

A. W. SLAYBACK, for defendant Robison : The widow is the only proper party to claim, sue for, or recover upon the insurance policies. — *Loos* v. *Insurance Co.*, 41 Mo. 541 ; *Meyer* v. *Insurance Co.*, 27 Pa. St. 268 ; *Chaplin* v. *Canada*, 8 Conn. 286 ; *Fellows* v. *Gilman*, 4 Wend. 414–419 ; *Hoyle* v. *Insurance Co.*, 99 Mass. 342 ; *Campbell* v. *New England, etc., Co.*, 98 Mass. 381 ; Bliss on Ins., secs. 25–317, 320–323. The administrator of the husband has no interest in the fund. — *Swan* v. *Snow*, 11 Allen, 224. The proceeds of the policies belonged to the widow exclusively. — *Insurance Co.* v. *Brant*, 47 Mo. 419 ; *Baker* v. *Young*, 47 Mo. 453 ; *Hathaway* v. *Sherman*, 61 Me. 471 ; *In re Murrin*, 2 Dill. 120 ; 26 La. An. 326 ; *Barron* v. *Barron*, 24 Vt. 375. Fraud. — *Payne* v. *Stanton*, 59 Mo. 158 ; *Smith* v. *Vodges*, 2 Otto, 183.

BAKEWELL, J., delivered the opinion of the court.

This proceeding is a bill in equity against the widow of one James P. Robison, against the administrator of his estate, and against the Mutual Benefit Life Insurance Company of Newark.

The allegations of the bill are, that the intestate died insolvent, and largely indebted to various persons ; that he owed plaintiff $4,332, which has been allowed against his

estate, and placed in the fifth class; that Robison, during his lifetime, effected insurance on his life in the defendant company by three policies of $5,000 each, all payable to his widow, the annual premiums being all paid by him, and being, respectively, $283, $263, and $289, and payable annually on the dates of the policies, which were Feb. 26, 1867, Feb. 21, 1868, and May 12, 1870; that at the time of his death there was further insurance on his life for the benefit of his wife, amounting to $7,000, on which the annual premiums were paid by the deceased during his lifetime; that at the time of these insurances, and of the payment of these premiums, Robison was embarrassed, and the premiums a voluntary donation to his wife, in fraud of his creditors, and for the purpose of hindering and delaying them, and the plaintiff especially. The prayer is, that the sum due on the policies in the defendant company be subjected to the payment of the allowed demand of plaintiff, and for general relief.

The defendant company paid into the hands of a receiver, by direction of the court, the amount due on the policies, and was discharged. The administrator failed to answer, and default was taken as to him. The widow filed an answer, denying the allegations of the petition as to indebtedness, fraud, and insolvency.

After the present action was begun, Schülenburg & Boeckler instituted a similar proceeding; and, still later, a like action was begun by Matlack. The suits were consolidated for trial.

The evidence showed clearly that Robison was insolvent when he died, in March, 1876, and during the latter part of 1875. It was admitted that Robison paid annually, in February and May, $1,225 premiums on five policies, all payable to his widow; that his widow had already received $5,500 on two policies, on which the aggregate annual premium was $390; that all the premiums were paid by Robison with his own funds. The court found these facts; and, further, that

Robison was solvent when the policies were issued, and when all premiums were paid, except those maturing in February, 1876 ; that when these were paid, Robison was insolvent, and the payments in fraud of creditors ; that the amount of these premiums paid in cash was $342. The court further found that Robison was indebted to the plaintiffs in the other suits in the manner claimed by them ; and decreed that the receiver pay costs, and, after paying the plaintiff $359, being the premiums paid in fraud of creditors, and interest, that the remainder be paid to the widow.

The decree in this case seems to be warranted by the pleadings and evidence. All the parties to the suits, except the administrator, moved to set it aside ; but we see no reason why it should be disturbed. The administrator would seem to have nothing to do with the case. He was not a necessary party plaintiff, and we do not know why he was made a party defendant. But, as he incurs no liability for costs, and has taken no part in the proceedings, the decree ought not to be set aside merely because the administrator is unnecessarily made a defendant. That neither the administrator nor the Probate Court have any control over the proceeds of these policies is quite plain. If the premiums were lawfully paid, the money belongs to Mrs. Robison alone. If they were paid by Robison in fraud of his creditors, and, in consequence of such payments, as it is claimed, the proceeds of the policy are not to go to his wife, then the money belongs to such of his creditors as by diligence establish the fraud. But in no case can it be Robison's money. The donor in a voluntary conveyance has parted with all his interest in the property ; he cannot set his own conveyance aside, and his administrator is in no other or better position than the donor. If the voluntary and fraudulent conveyance of his intestate could be attacked by the administrator, it would follow in the case at bar, for instance, that if the plaintiffs had succeeded in the main object of their suits, and obtained the full relief

which they claimed, the balance of these policies, after paying the creditors of Robison in full, would go, not to Mrs. Robison, the payee in the policies, but to Robison's heirs generally. And if the administrator had any thing to do with the matter, it would follow that plaintiffs should be paid *pro rata* out of the fund, as all representing fifth-class demands, and not in the order of the equitable lien created by each bill.

The truth is that the administrator has nothing to do with a proceeding of this nature. A fraudulent conveyance, if attacked, must be attacked by those defrauded by it. Such a bill becomes a specific lien as soon as filed, and the creditor who first files his bill obtains a priority as a reward for his diligence.

In the present case, Schulenburg & Boeckler claim that they are entitled to share the fund recovered equally with Pullis, whose bill was first filed; and they endeavor to support their claim by an affidavit to the effect that they were thrown off their guard, and delayed in filing their bill, by misrepresentations of an attorney who was acting at once for the administrator and for Pullis, and who led them to believe that if they would share the expenses of the trial they should have a *pro rata* share of the amount recovered. It was the imprudence of these plaintiffs, if they relied in so important a matter upon loose talk, which, as the affidavit filed shows, was quite probably misunderstood. We think that the Circuit Court committed no error in disregarding this affidavit. The money was properly applied to the payment of the creditor first filing his bill.

The question of priority would be wholly unimportant, had the views of counsel for plaintiffs as to the relief to which they were entitled found acceptance with the trial court, because the fund, in that case, would pay in full the claims of all the plaintiffs. They contend that they were entitled to a decree subjecting the whole proceeds of the three policies to the payment of their debts. They cite no

authority whatever in support of this view, and we do not think that it can be maintained.

This is not the case of a voluntary assignment by the intestate, during his lifetime, of a policy of insurance originally issued in favor of the deceased himself. If such an assignment were fraudulent, as a policy of insurance is a security for money, a chose in action which may have a money value and may be sold, a conveyance of it fraudulently made would tend to hinder and delay creditors, and might be set aside by them. But these policies were effected without the slightest fraud; they were for the benefit of the wife of the intestate and the mother of his children, and were payable alone to her. If she had the money of her own to pay the February premiums of 1876, no question would arise as to her right to the proceeds; and if the deceased unjustly took from the funds to which his creditors were entitled over $300 to keep these policies in life, he did not own the policies at the time; he had no personal interest in them; he did not, by that act, convey them from himself to her, create them, or give them their value. They had acquired a value by the payment of premiums with Robison's own money, whilst he was solvent, during a period of nearly ten years, when the last premium was paid; and if that was paid with money which he had no right to so apply, all that the creditors can reasonably require, as against the beneficiaries, is that the money should be paid back to the creditors. As, if this money had been spent by Robison to put a new roof on a house which in the days of his prosperity he had given to his wife, equity would not decree that the whole house which had thus been preserved from dilapidation should go to the creditor. On that supposition, it belonged to Mrs. Robison before the creditor's money was put into the roof; and after that occurrence, the creditor could, in equity, require to be repaid only what had been taken from the fund that should have gone to the payment of debts. Policies effected without fraud, directly and

on their face for the benefit of the wife, and payable to her, are not fraudulent as to creditors, and do not become the property of the creditor by the subsequent insolvency of the husband, who is the subject insured. *Appeal of Elliott's Executors*, 50 Pa. 75.

It has been decided, indeed, in this State (*Charter Oak Life Insurance Co.* v. *Brant*, 47 Mo. 421), that policies on the life of the husband, payable to the wife after the husband's death, such as were those in question here, though designed for the benefit of the wife, inasmuch as the consideration is dependent upon the action of the husband, and moves from him, are choses in action, or equitable interests, belonging absolutely to the wife, in such a sense that they cannot be assigned by husband and wife so as to bar her right of survivorship. It would follow, therefore, that if these policies had been assigned for a valuable consideration by Robison and his wife, the proceeds of such assignments would be assets to go to the administrator, and to be applied to the payment of his debts, as such an assignment would be a reduction to possession by the husband of the reversionary interest of the wife. After the death of the husband, however, there can be no question of reduction to his possession; and we do not see how the proceeds of the policy can belong to any one but the wife, according to the terms of the policy itself.

Our attention is called to the statute (Wag. Stat. 936, secs. 15, 18) providing that a married woman may, in her own name, or in that of any trustee for her, insure her husband's life; in which case, the insurance-money shall be payable to her alone, free from all claims of any creditors or representatives of the husband. But, inasmuch as that statute provides that the exemption shall not apply where the annual premium exceeds $300, it has been decided by the Supreme Court, in the case just cited, that policies such as those in the case at bar are withdrawn from the operation of the statute, and are not governed by its terms. It

appears, in this case, that Mrs. Robison had already received, when these suits were begun, about $5,500 from the Penn Mutual and St. Louis Life Insurance Companies, on policies on her husband's life, on which the aggregate annual premiums were about $390, and we do not see how the rights of either plaintiffs or defendants can be affected by that statute. The law, as Judge Wagner says, in the case already cited, was founded on charity; its object is beneficence towards the widow and children of an insolvent man. It allows the husband and father, in behalf of those dependent upon him for support, to withdraw from the demands of his creditors $300 of his yearly income, and invest it in an insurance on his own life for their benefit, but it certainly was not designed to put the widow in a worse position than she would otherwise have occupied; and it nowhere provides that, if an insolvent man shall keep alive valuable policies already existing on his life, payable to his wife, with money which ought to go to the payment of his debts, therefore the entire proceeds of the policies already existing when he became insolvent shall go to his creditors, and not to his wife. There would be no beneficence in such a provision, and it is not demanded by justice. A man already insolvent may insure his life in his wife's name, for the benefit of his wife and children; and if the premium does not exceed $300 a year, they shall receive the whole proceeds when he dies, though he has taken from means that would otherwise go to pay his debts the annual sum required for premiums. But, if the policies be already in existence, and the annual premiums exceed $300, though such a policy be not protected by the statute, we see no reason whatever why the creditors should receive from its proceeds more than the premiums and interest thereon which have been paid to keep it alive. Our statute on this subject is also the law, with different modifications as to the amounts which the insolvent may thus expend, in many other States. It was copied into our laws from the New York law of 1840; and if it has

ever been interpreted so as to give to the creditors of the husband any other or greater rights in a policy for the benefit of the wife than they would otherwise have, we are not aware of it. Our attention has not been called, by any of the learned counsel representing appellants in this case, to any decision of any court favorable to their view, that where annual premiums to the excess of $300 a year have been paid by an insolvent husband to keep alive existing policies in favor of his wife, the proceeds of such policies should go to the creditors of the husband. If any such rulings existed, it is fair to suppose that they would not have escaped the diligence of those interested in maintaining that view of the case.

A policy effected by an insolvent husband on his own life for his wife's benefit might be considered as a voluntary settlement, and there would be nothing unjust in holding that the proceeds of such a policy, so created and kept up with the funds really belonging to the creditors of the husband, should enure to their benefit. *Trough's Case*, 8 Phila. Rep. 214. But the case of policies like those before us, which were effected in good faith, when the husband was solvent, and of which all premiums but those last maturing before his death were paid whilst he remained solvent, is widely different. The voluntary settlement of the policy upon the wife was made when the husband was in the position to make such a gift, and we do not see how such a policy is to be transferred without the consent of the beneficiary. If the policy was valid when issued, it must remain valid as long as the premiums are paid and other terms of the contract are fulfilled. But, if the premiums are paid with money belonging to other persons, that money should be refunded, of course, out of the proceeds of the policy when it becomes payable by the death of the subject.

It is contended by the attorney for the beneficiary that even if Robison was insolvent when he paid the last pre-

miums, such payment was not in fraud of creditors unless Robison knew himself to be insolvent, and had an actual intention to defraud. This is an erroneous view of the law, as will readily be perceived by a reference to the pages of any elementary writer on the subject of fraudulent conveyances. We may refer to the cases cited in Bump's Fr. Conv. 292–296.

Under our law, the husband, though insolvent, may withdraw from his creditors $300 annually, for the purpose of effecting and keeping up an insurance on his life. If he expends a greater sum for that purpose, the exemption does not apply; and whether the proceeds of the policy would in such a case be subject to pay the husband's debts, or whether the excessive premium only could be thus applied, is a question on which we are not called upon to pass. It does not arise in the present case. Where the voluntary settlement was good when made, the creditors of the husband may be entitled to apply to the payment of the indebtedness of the husband, out of the proceeds of the policy, whatever amount over $300 a year has been paid by the husband, whilst insolvent, to keep up his policies; but after this is done, the proceeds belong to the beneficiary. It is upon this view of the law that the Circuit Court seems to have based its decree in this case. We think the view a correct one; and, as our attention is not directed to any error warranting a reversal of this judgment, it will be affirmed. All the judges concur.