MARTROM D. LEWIS, Plaintiff in Error, *v.* AMERICAN LIFE
INSURANCE COMPANY ET AL., Defendants in Error.

April 22, 1879.

A settlement in fraud of creditors cannot be impeached by the administrator
of the settler.

ERROR to St. Louis Circuit Court.

*Affirmed.*

DAVID GOLDSMITH and ED. CUNNINGHAM, JR., for plaintiff
in error: The reasons for the rule which at common law
precluded the administrator from suing for property given
by his intestate in fraud of his creditors were, *first*, that he
was the representative only of his intestate, and, *second*,
that creditors might sue the fraudulent donee as executor
*de son tort.* — *Babcock* v. *Booth,* 5 Hill, 181; 4 Bac.
Abr., tit. "Executors and Administrators," B. 3, p. 28;
*Cooley* v. *Brown,* 30 Iowa, 470; *McLean* v. *Weeks,* 61
Me. 277; *Bouslaugh* v. *Bouslaugh,* 68 Pa. St. 499; *Hunt*
v. *Butterworth,* 21 Texas, 133. Our administration law has
entirely superseded the machinery of the common law for
administration of the estates of deceased persons. — *Teter-
ington's Administrator* v. *Hooker,* 58 Mo. 593; *Holland* v.
*Cruft,* 20 Pick. 321; *Pearce* v. *Calhoun,* 59 Mo. 274;
*Ansley* v. *Baker,* 14 Texas, 607. Under our system of
administration, neither of these reasons any longer exists. —
*Stewart* v. *Kearney,* 6 Watts; *Dixon* v. *Cassell,* 5 Ohio,
533; *Barasien* v. *Odum,* 17 Ark. 122; *Fox* v. *Van Nor-
man,* 11 Kan. 214. And the rule should therefore no longer
be enforced. — *Gibbons* v. *Peeler,* 8 Pick. 254. But the
gift was not complete in the lifetime of Sandfelder; the
possession of the policy, and all rights under it, remained
in him up to the time of his death, and thereupon vested in
the plaintiff. — *Worthington* v. *Curtis,* 5 Big. Life Ins. Cas.
740; *Clark* v. *Durand,* 12 Wis. 223; *Kerman* v. *Howard,*

23 Wis. 108; *Gambs* v. *Covenant Mutual Ins. Co.*, 50 Mo. 44; *Huey* v. *Huey*, 65 Mo. 689. And in such cases the rule has no application, and had none at common law. On the contrary, it is the administrator's right and duty to sue for the property. — *Bethel* v. *Stanhope*, 1 Cro. 810; *Shears* v. *Rogers*, 3 Barn. & Adol. 362; *Hunt* v. *Butter-worth*, 21 Texas, 133; *Smith* v. *Pollard*, 4 B. Mon. 68; *Kilbourne et al.* v. *Fay*, 29 Ohio St. 264.

A. BINSWANGER, for defendant in error, cited : *McLaughlin* v. *McLaughlin*, 16 Mo. 242; *Brown's Administrator* v. *Finley*, 18 Mo. 375; *George* v. *Williamson*, 26 Mo. 190; *Hall* v. *Callahan*, 66 Mo. 323.

BAKEWELL, J., delivered the opinion of the court.

The petition states that the plaintiff is the administrator of Sandfelder; that on February 22, 1875, the defendant, in consideration of $98 then paid by Sandfelder, and a like sum to be paid annually thereafter, insured the life of Sandfelder for $5,000, to be paid at his death to his wife and his five children and their legal representatives. The wife and children are co-defendants. The petition alleges that Sandfelder paid the annual premiums during his life, and died in April, 1877; that due notice and proofs of loss were made, and that the defendants hold and refuse to deliver the policy; that Sandfelder was insolvent when the payments were made, and died insolvent; that he left creditors, many of whom were creditors at the date of the policy; that the sum due has not been paid; that the insurance company is ready to pay to the party entitled to receive the money; and that the creditors of Sandfelder are seventy in number. The defendants demurred, on the grounds that the plaintiff has no legal capacity to sue; that no right is vested in him.; that by the terms of the policy the loss is payable to the parties interested, share and share alike ; and that the petition does not set forth facts sufficient to constitute a cause of action. The demurrer was sustained. The plaintiff de-

clined to plead further, and there was final judgment. The plaintiff brings the cause here by writ of error.

The demurrer was properly sustained. Whether this provision made by the deceased during his lifetime for his wife and children could be successfully attacked as in fraud of creditors, it is not necessary for us to determine. What we regard as settled is that it cannot be attacked by his administrator. The rule that a settlement in fraud of creditors cannot be impeached by the administrator of the settler, has been constantly affirmed in Missouri.

Parties and privies cannot allege their own frauds as a ground for avoiding a conveyance. *Henderson* v. *Henderson*, 13 Mo. 151. A conveyance of an intestate cannot be impeached by his administrator for fraud as to creditors. None but the creditors themselves, and those in privity with them, can attack it. *McLaughlin* v. *McLaughlin*, 16 Mo. 242. None but a creditor or purchaser can raise the objection that a deed conveying articles consumable in the using, the grantor retaining possession, is void and inoperative. *Ibid.* An administrator cannot impeach a gift of his intestate for fraud as to creditors, although the estate may be insolvent. *George* v. *Williamson*, 26 Mo. 192. The doctrine of these cases has been recently affirmed by the Supreme Court in *Hall* v. *Callahan*, 66 Mo. 323, and has been followed by this court in *Pullis* v. *Robison*, 5 Mo. App. 548.

The donor in a voluntary conveyance has parted with all his interest in the property. If the administrator, as trustee of the creditors, were in a better condition than the fraudulent donor, several difficulties would arise. The creditors must then be paid *pro rata* out of the funds, irrespective of the question of diligence ; and their right to file bills, and to maintain a priority in accordance with the order of the equitable lien created by each creditor's bill, would be done away with. It would follow, also, that although the creditors were unwilling to disturb the conveyance, and

though they are confessedly the only parties interested, a conveyance good against every one but creditors might be set aside at the instance of one in no way interested in the matter. The fraudulent conveyance being set aside at the instance of the administrator, the property (in this case money, the proceeds of this policy) becomes assets in the administrator's hands. It must be distributed *pro rata* amongst the creditors, according to their class; and if the creditors are paid in full, and a surplus remains, that surplus is assets in the hands of the administrator, and must be distributed generally amongst the heirs of the intestate. This would be manifestly unjust, when the settlement attacked (and valid against all but creditors) was made for the benefit of only some of the heirs of the settler, or for none of them, or for the benefit of his heirs in different proportions.

We are referred by counsel for the plaintiff in error to *Titterington* v. *Hooker*, 58 Mo. 593. The point in that case is, that, under our administration laws, the failure of personal assets will not, after final settlement, authorize a bill in equity on behalf of creditors to have lands descended to the heirs sold to satisfy creditors. This is most certain. One of the main objects of the provision in our administration law subjecting the land of the deceased to sale for payment of his debts, and very frequently the main object of administration upon the estate, is to relieve real estate from the cloud of a possible claim from some unknown creditor of the ancestor. Estates are to be settled in the Probate Courts of Missouri; and the whole matter is not to be transferred, after final settlement there, to a court of equity, on the application of creditors who have neglected to proceed against the real estate in the Probate Court. It is in this sense that the Supreme Court says in that case that "the simple and effective provisions of our administration law, whereby the whole estate, real and personal, may be subject to the payment of his debts, were designed to super-

sede the more cumbrous machinery of the common law; and that the whole doctrine of equitable assets, marshalling assets in equity for the payment of debts, and bills for discovery of assets, and account, is without application here, save so far as the principle involved may be invoked in illustration of the analogous remedies afforded by our statute.''

But it is nowhere said, nor is it anywhere intimated in our reports, so far as we know, that the administrator may attack a voluntary settlement of his intestate as being in fraud of the creditors of the donor; that this can be done by any one but the creditors of the donor; or that such a conveyance is not perfectly good between the parties and their privies, until shown to be fraudulent by some one interested as a creditor of the estate.

Counsel for the plaintiff in error file a carefully prepared brief, and have argued in that brief and at our bar that the reasons for the common-law rule that the administrator is bound by the acts of his intestate have ceased, and that, under our system, the administrator represents, not only the intestate and the distributees of the estate, but also the creditors of the estate, of whom he is peculiarly the trustee. The arguments that they adduce may or may not be good reasons for modifying the existing law. But the law itself seems to give no such right to the administrator as is here claimed for him, and any such right has always been denied to him whenever the question has arisen in the courts. We are bound by the existing law and its authoritative interpretation.

The judgment of the Circuit Court is affirmed. All the judges concur.