THE STATE *ex rel.* RICHARDSON, *Administrator for* DICKSON *et al.*, v. WITHROW *et al.*, *Judges of the Circuit Court of St. Louis.*

141   69
84a 640
84a 663
85a 633
141   69
95a ²692

In Banc, July 17, 1897.

1. **Assignments:** JURISDICTION.   Jurisdiction of general assignments for the benefit of creditors is vested by the statutes in the circuit courts.

2. ———— : PARTNERSHIP ESTATES.   Subject to the fundamental requirement that the assets of a partnership estate shall be used primarily for the discharge of partnership obligations, the surviving partner as administrator, at common law and in the absence of an inhibitory statute, has the same authority to dispose of such assets by sale, mortgage, pledge or assignment, and the same right to prefer or secure creditors in the various modes permitted by the law, that the partners jointly had while all were living.   In the absence of an inhibitory statute, the surviving partner has power to assign the partnership property for the benefit of its creditors.   But under the laws of this State the surviving partner has no power by general assignment to so dispose of the partnership estate as to destroy the jurisdiction of the probate court over it.

3. **Jurisdiction:** ASSIGNMENT OF PARTNERSHIP ESTATE AFTER ADMINISTRATION BEGUN.   The surviving partner in 1871 qualified as administrator of a partnership estate, made two annual settlements, and in 1873 made an assignment for benefit of general creditors.   Six days after the assignment the probate court required the surviving partner to give a new bond within ten days with the proviso that if he failed so to do his authority as administrator should be revoked.   The bond was not filed, and there was never a final settlement of the estate. In 1895 the probate court ordered the partnership estate into the

hands of the public administrator, and it was contended that the circuit court had been given no jurisdiction over the estate by the deed of assignment.  *Held*, that the deed of assignment could not be held void by reason of facts *dehors* the instrument, until the assignee and the creditors were afforded an opportunity to be heard and given their day in court, although the jurisdiction of the probate court was in full force at the date of such assignment and had been for nearly two years, and was ousted by the voluntary assignment of the surviving partner.  *Held*, also, that a court is not charged with the duty of inquiring whether there are facts *aliunde* which make an assignment void before taking jurisdiction of it.  *Held*, also, that the deed of assignment, in so far as it attempted to convey the partnership property, was void *ab initio* and on its face, and created no assignment on account of which the circuit court could take jurisdiction of the estate, but left it in the probate court with that court's jurisdiction unimpaired.

4.  **Writ of Prohibition:** WHEN IT WILL LIE: MATTERS IN PAIS.  The remedy by prohibition lies when the matter or cause in which the court is acting does not fall within the classes over which the law gives it jurisdiction, or when the court acts in excess of its jurisdiction.  Objections to jurisdiction which depend on matters *in pais* can not be considered on an application for the writ.

## *Prohibition.*

PEREMPTORY WRIT AWARDED.

Prior to the twenty-sixth day of January, 1871, John J. Murdock and Charles K. Dickson were partners in the city of St. Louis, doing business under the name and style of Murdock & Dickson.  On that day the firm was dissolved by the death of Dickson.  On the twenty-second day of March, 1871, Murdock, the surviving partner, took charge of the partnership estate and gave bond in the probate court in the sum of $125,000, with Barton Bates and James B. Eads as sureties.  Murdock continued to act as administrator of the partnership estate until the twentieth day of November, 1873, making in the interim two annual settlements.  These show demands presented and allowed against said estate to the amount of $20,674.66.  The second annual settlement showed a balance of assets

in the hands of Murdock of $97,903.25 and that he was chargeable with a further sum of $20,650.    It also appears that at the time of filing the inventory, the partnership estate was indebted to the estate of Charles K. Dickson in the sum of more than $80,000.

On the twentieth day of November, 1873, the probate court of St. Louis made an order requiring Murdock to give a new bond in the sum of $125,000, with other and further security to be approved by said court with the proviso that if he failed to give such additional bond and security in ten days his authority as surviving partner should be revoked and from that time cease.    Murdock never gave this bond, nor were any further proceedings had in the probate court in the matter of the estate of Murdock & Dickson.    The only entry thereafter appearing was in the following words on the index records of the court after the index of the estate of Murdock & Dickson:    "Finally settled December term, 1873."    It is admitted that the said partnership estate was never finally settled and that the said entry was made without authority by one John W. Gutting, deputy clerk of the probate court at or about the time of the revocation of Murdock's authority to administer.

On October 14, 1873, John J. Murdock executed a deed of assignment to John G. Priest, for himself individually and as survivor of the firm of Murdock & Dickson, by which he undertook to convey to said Priest as assignee all his own property for the benefit *pro rata* of his individual creditors, and all the property of the firm of Murdock & Dickson for the benefit *pro rata* of the creditors of that firm.    This assignment purports on its face to be made by Murdock in the two capacities aforesaid, and also purports on its face to be an assignment for the benefit of creditors under the statutes of this State.    Priest qualified as assignee and

took possession of certain assets of Murdock & Dickson on the twenty-ninth day of November, 1873, and since then the matter of the assignment has been pending in the circuit court of St. Louis. Priest made no report, however, as assignee, until November 23, 1880. He had heard proof of claims, and claims to the amount of over $117,000 were proved up against the estate. These claims are set out in "Exhibit B" attached to the agreed statement of facts. Among them were demands in large amounts in which James B. Eads, Barton Bates, Third National Bank and the National Bank of the State of Missouri were interested. It may be stated here that after the death of Dickson, Murdock continued to do business under the firm name at the old stand until about October 12, 1873. Assets of the alleged value of $40,000 came into the hands of Priest as assignee under the deed.

On December 15, 1888, Priest filed a petition in the circuit court of St. Louis for his final discharge in which he admitted the possession of $2,911.48. Exceptions were filed to this report by a creditor. It was referred and the referee reported that there were $9,782.58 in the hands of the assignee which ought to be distributed among creditors. The assignee excepted to this report, the St. Louis circuit court overruled these exceptions, an appeal was taken to this court which resulted in a finding that there were $9,632.58 in Priest's hands as assignee, with a mandate to the circuit court to enter judgment against him for that sum.

Charles K. Dickson by his last will devised to James B. Eads and Barton Bates a large quantity of real estate to hold in trust for his wife and children in accordance with the provisions of the will. Eads and Bates were likewise appointed as executors. After Priest qualified as assignee under the above mentioned

deed he instituted suit in the circuit court of St. Louis county to the June term, 1875, against Eads and Bates as trustees under said will, and against the devisees of Charles K. Dickson, to divest out of them the title to all the property held in trust by them under said last will of Charles K. Dickson which Murdock and Dickson had owned jointly as partners, and to vest it in Priest as the assignee of the partnership estate. Eads and Bates demurred to this petition on the ground that it did not state facts sufficient to constitute a cause of action, and that the deed of assignment made by Murdock to Priest was on its face absolutely void and of no force against the interest of Dickson in said firm of Murdock and Dickson, and on the further ground that it was defective and insufficient in its description. The court sustained this demurrer. A motion for rehearing was filed and a judgment entered of the following tenor:

"Monday, April 1, 1878.

"John G. Priest, Assignee of Murdock  
    & Dickson, and John J. Murdock,  
          v.          (34,831)  
"James B. Eads and Barton Bates,  
    Trustees under the last will and  
    testament of Chas. K. Dickson,  
    deceased.

"Now at this day come the defendants by their attorney, and this cause coming on for hearing, the plaintiffs, although called, failed to appear, wherefore on motion of defendants, it is ordered that said plaintiffs be nonsuited. It is therefore considered that the plaintiffs take nothing by their suit in this behalf and that the defendants go hereof without day and recover of the plaintiffs their costs and charges herein expended and have execution therefor."

In August, 1895, the probate court of St. Louis

ordered the estate of Murdock & Dickson into the hands of William C. Richardson, public administrator, who entered his appearance and took charge. Thereupon it was suggested to the circuit court of St. Louis that it was exceeding its jurisdiction in taking cognizance of the assignment of the partnership estate which Murdock had made to Priest, and this proceeding was instituted to obtain a writ prohibiting the circuit judges from proceeding further with said assignment.

These are the facts in the case as agreed to by the parties.

*John M. Dickson* for relator.

(1) The validity of the appointment of an administrator by the probate court in Missouri can not be collaterally attacked. *Macey v. Stark*, 116 Mo. 481; *Camden v. Plain*, 91 Mo. 118; *Rowden v. Brown*, 91 Mo. 429; *Price v. R. E. Ass'n*, 101 Mo. 107; *Murphy v. De France*, 105 Mo. 55; *Rogers v. Johnson*, 125 Mo. 213. (2) The public administrator has a right by virtue of his office to take into his control any estate, the assets or property of which are in danger of being "injured, wasted, purloined or lost." Wag. Stat. 1870, sec. 8, art. 9; R. S. 1889, secs. 299, 306; *Headlee v. Cloud*, 51 Mo. 301; *Becraft v. Lewis*, 41 Mo. App. 554; *Leeper v. Taylor*, 111 Mo. 312. (3) The probate court, having once rightfully acquired jurisdiction, could not be divested of it by any proceedings in any other court. *Seibel v. Simeon*, 62 Mo. 257. (4) After a surviving partner has qualified by giving bond in the probate court, he can not devolve his trust, by means of an assignment to a third person, and shift the place of accounting from the probate to the circuit court. 1 Wag. Stat. 1870, secs. 52 to 74, inclusive, pp. 78, 79, 80, 81 and 82; *Shattuck v. Chandler*, 40 Kan. 516; *Tiemann v.*

*Molliter*, 71 Mo. 512. (5) The jurisdiction of the probate court over surviving partners who have given bond is exclusive. 1 Wag. Stat. 1870, sec. 52 to 74, pp. 78, 79, 80, 81 and 82; *Ensworth v. Curd*, 68 Mo. 285; 1 Woerner's Law of Adm., sec. 130; *Caldwell v. Hawkins*, 73 Mo. 453; *Pearce v. Calhoun*, 59 Mo. 272; *Titterington v. Hooker*, 58 Mo. 598; *French v. Stratton*, 79 Mo. 562; R. S. 1855, p. 1600; *Rozelle v. Harmon*, 103 Mo. 343. (6) The jurisdiction of the circuit court over the accounts of the surviving partner who has given bond in the probate court is appellate, and where appellate jurisdiction is expressly conferred upon a court, original jurisdiction is negatived. 1 Wag. Stat. 1870, sec. 1 to 11, pp. 119, 120; *In re Bruening*, 42 Mo. 276; *Pearce v. Calhoun*, 59 Mo. 273; *Cones v. Ward*, 47 Mo. 290; *McCartney v. Garneau*, 4 Mo. App. 567. (7) After the dissolution of a firm by death or otherwise, the survivor or remaining partner can not bind the firm assets by notes or other obligations entered into after the date of dissolution. *Knaus v. Givens*, 110 Mo. 64; *Moore v. Lackman*, 52 Mo. 324; 1 Lindley on Par., p. 283; *Richardson v. Moies*, 31 Mo. 431; 17 Am. and Eng. Ency. Law, 1443, notes 2 and 3; *Ib.* 1144, note 1; *Ib.* 1145, note 2. (8) Jurisdiction of the subject-matter is the power to hear and determine cases of the class to which the proceedings in question belongs. *Leonhard v. Sparks*, 117 Mo. 103. (9) Jurisdiction over subject-matter can not be conferred by laches, lapse of time, consent of parties or waiver. *Brown v. Woody*, 64 Mo. 550; *Dodson v. Scroggs*, 47 Mo. 287. (10) The judgment of the circuit court holding the assignment invalid is a final judgment. *Moran v. Plankington*, 53 Mo. 243; *O'Connor v. Koch*, 56 Mo. 262; *Rogers v. Gosnell*, 51 Mo. 468; *Sachse v. Clingingsmith*, 97 Mo. 411; *State ex rel. v. Gaddy*, 83 Mo. 142; *Young v. Byrd*, 124 Mo. 597. (11) If the circuit court has no jurisdiction over the

assigned estate, then this court should forever prohibit said court from interfering with the assets of such estate, and should by its mandate direct the said court to vacate the assignment proceedings and to compel the assignee to turn over the whole of the estate coming into his possession, or so much thereof as he may now have, to the public administrator, plaintiff herein. *State ex rel. v. St. Louis Court of Appeals*, 97 Mo. 283; *State ex rel. v. Rombauer*, 105 Mo. 107.

*Merrifield W. Huff* for respondent.

(1) The judgment of the circuit court on the demurrer and nonsuit was not a judgment that could be pleaded in bar of a subsequent suit. Wendell's Blackstone, p. 376; *Nordmansen v. Hitchcock*, 40 Mo. 178; *Downing v. Still*, 43 Mo. 309; *Taylor v. Larkin*, 12 Mo. 103; *Wells v. Moore*, 49 Mo. 229; *Morgan v. Bliss*, 2 Mass. 111. (2) The accounts allowed by the assignee became by virtue of such adjudication judgments and can not be impeached after the lapse of time granted to perfect an appeal. Wag. Stat., sec. 24, p. 154; R. S. 1889, sec. 446; *Eppright v. Kauffman*, 90 Mo. 25; *Nanson v. Jacob*, 93 Mo. 331; *Roan v. Winn*, 93 Mo. 504. (3) The circuit court had jurisdiction over the subject-matter involved in the cause "Assigned Estate of Murdock & Dickson" and hence the proceedings therein are not void. *State ex rel. v. Smith*, 104 Mo. 419; *Leonard v. Sparks*, 117 Mo. 103; *Burke v. Kansas City*, 118 Mo. 309; *State ex rel. v. Withrow*, 108 Mo. 1; *Hope v. Blair*, 105 Mo. 85. (4) The assignment made by Murdock was not void—it was at most only voidable. *Hargadine v. Gibbons*, 114 Mo. 561. (5) Prohibition is not the proper remedy in this case. Session Acts 1895, p. 95; *State ex rel. v. Rombauer*, 105 Mo. 107.

GOODE, Special Judge.—Jurisdiction of general assignments for the benefit of creditors is vested by the statutes of this State in the circuit courts, which are expressly charged with the supervision and control of assignees in the execution of their trusts. If the deed of Murdock as surviving partner of the firm of Murdock & Dickson to Priest effected an assignment of the partnership estate, the duty of the respondents as judges of the circuit court of St. Louis to assume and continue to exercise jurisdiction by all proper orders and judgments until the final settlement of the assignee is unquestionable.

The power of a surviving member of a partnership to assign the firm property for the benefit of its creditors in the absence of an inhibitory statute, has been generally upheld. *Shanks v. Klein*, 104 U. S. 18; *Emerson v. Senter*, 118 U. S. 3; *Williams v. Whedon*, 109 N. Y. 333; *Riley v. Carter*, 25 Atl. Rep. (Md.) 667; *Atchison v. Jones*, 1 S. W. Rep. (Ky.) 406; *Patton v. Leftwich*, 86 Va. 421; *Hanson v. Metcalf*, 46 Minn. 25; *Hill v. Draper*, 54 Ark. 395; *Burnside v. Merrick*, 4 Metc. 537; *Moody v. Downs*, 63 N. H. 50; *White v. Union Ins. Co.*, 1 Nott. & McC. 556; 9 Am. Dec. 726; *Gratz v. Bayard*, 11 S. & R. 41.

Sometimes, but not usually, the rule is qualified by requiring the consent of the administrator of the deceased partner to render the assignment valid. *Nelson v. Tenney*, 36 Hun. 327; *Barcroft v. Snodgrass*, 1 Cold. 431. In *Salisbury v. Ellison*, 7 Colo. 167, 2 Pac. Rep. 906, it was denied that the survivor can make an assignment with preferences unless the estate is solvent, on the ground that he is a trustee for all the creditors and can not sacrifice the interests of some by showing favoritism to others. The opinion declares that in the cases allowing assignments, with one exception, the

question of insolvency and preference was not mooted.

But the weight of authority favors the plenary right of the survivor in all respects. Subject to the fundamental requirement that the assets shall be primarily devoted to the discharge of partnership obligations, he is recognized as having the same authority in disposing of them by sale, mortgage, pledge or assignment, the same right to prefer or secure creditors in the various modes permitted by the law, that the partners enjoyed jointly while both were living. *Bohler v. Tappan*, 1 Fed. Rep. 469; *Wilson v. Soper*, 13 B. Mon. 411; *Barry v. Briggs*, 22 Mich. 201; *Stearnes v. Houghton*, 38 Vt. 583; *Roys v. Vilas*, 18 Wis. 169; *Milner v. Cooper*, 65 Iowa, 190; *Herd v. Delp*, 1 Heisk, 530; *Fulton v. Thompson*, 18 Tex. 278; *Allen v. Hill*, 16 Cal. 113; *Hogg v. Ashe*, 1 Hayw. (N. C.) 472; *Knott v. Stephens*, 3 Or. 269. The theory underlying the rule is that full power of disposition is a necessary incident to the survivor's ownership of the property, the title of which in legal contemplation is in him for winding up purposes. Bates on Partnership, sec. 731. Courts have sometimes gone to the length of holding him the owner in so absolute a sense that when sued individually he may set off a debt due him as surviving partner (*Smith v. Barrow*, 2 T. R. 476; *Adams v. Hackett*, 7 Foster (27 N. H.), 289; *Quillen v. Arnold*, 12 Nev. 234; *Nehrboss v. Bliss*, 88 N. Y. 600), or if sued on a firm liability may set off an individual demand. *Stafford v. Gold*, 9 Pick. 533. This extreme view of his ownership and title does not obtain in this State. *Weil v. Jones*, 70 Mo. 560.

II. But it is contended that as Murdock had given bond as surviving partner, and had been acting under the orders of the probate court for two years or more before the deed to Priest was executed, the jurisdiction of that court over the partnership estate was in full

force at the date of said deed; that it could not be disturbed or ousted by any act of Murdock, and that hence the deed passed no estate to Priest and created no assignment of which the circuit court could assume jurisdiction. This argument is unsound. It appeals to the court to declare the deed void by reason of facts *dehors* the instrument in a proceeding to which neither Priest nor the beneficiaries are parties. Before so fatal a step could be taken all parties in interest should be afforded an opportunity to be heard and to prove that the facts alleged to invalidate the assignment under which they claim, in reality do not exist. To restrain the court on this theory from proceeding further and hold the deed a nullity would be to find facts which conclude absolutely the rights of the parties to it without allowing them a day in court or chance to defend.

For kindred reasons the circuit court can not be prohibited from proceeding with the assignment on that ground. The remedy by prohibition lies when the matter or cause in which the court is acting does not fall within the classes of which the law gives it jurisdiction, or when it acts in excess of its jurisdiction. *Thomas v. Mead*, 36 Mo. 232; *Howard v. Pierce*, 38 Mo. 296; *Washburn v. Phillips*, 2 Metc. 296.

The deed to Priest, if void or voidable only because Murdock had previously given bond and undertaken a settlement of the partnership affairs in the probate court, would present a *prima facie* valid assignment for the benefit of creditors of which the circuit court would be bound to take cognizance and constitute Priest *prima facie* an assignee whom it would be bound to control until the circumstances which avoided the instrument were made to appear by some form of pleading and proof. A court is not charged with the duty of inquiring whether there are facts *aliunde* which make an assignment void before taking jurisdiction of it. Its

chart in the matter of jurisdiction is the law—the statutes of the State. If it finds conferred on it therein the right to hear and determine a case or proceeding of the kind presented, its duty, until more appears, is clear. It must entertain the matter. So courts of last resort, in ascertaining whether inferior tribunals are transgressing their jurisdiction, look to the law to see what class of proceedings fall within the cognizance of the court below, and whether the one in question is of the prescribed class.

Objections to jurisdiction which depend on matters *in pais* can not be considered on an application for this writ. *Joseph v. Henry*, 1 L. M. 388; 19 L. T. Q. B. 369; *Brown v. Cocking*, 9 B. & S. 503. They must be raised in the lower court, saved by exception and carried up by appeal. All this was clearly elucidated in *State ex rel. v. Withrow*, 108 Mo. 1.

III. But if the surviving partner is without power to make an assignment of partnership effects, the case is altogether different. The deed to Priest shows on its face that Murdock executed it as the surviving member of his firm. If the statutes denied him the right to so dispose of the firm's estate, then the instrument was void from its inception, not on account of matters *in pais* peculiar to it, but because every attempt of the kind, whatever the surrounding circumstances, violates the policy of the law. Of course these remarks are to be understood as applying to the deed only in so far as it undertook to transfer partnership property. This brings us to consider the question whether the legislation in this State respecting the settlement of partnership estates at the death of a member abrogates the survivor's common law right to assign the assets for the benefit of creditors. I can not escape the conviction that it does. The authorities on the subject are not altogether harmonious. *In Indiana,* under a statute

which provides that if the surviving partner does not give bond, the probate court *may* appoint a receiver of the estate, it was held that the survivor might still mortgage or assign the property. *Havens & Geddes Co. v. Harris*, 39 N. E. 49. The statute construed was not compulsory. The Supreme Court *of Kansas*, interpreting legislation in all respects similiar to ours, denied absolutely the right of assignment. *Shattuck v. Chandler*, 40 Kan. 516. The decisions *in Maine* under identical statutes, are inconsistent with the right, it being held that a sale by the survivor before he gives bond is void. *Cook v. Lewis*, 36 Me. 340; *Putnam v. Parker*, 55 Me. 235; *Hill v. Treat*, 67 Me. 501. The question is one of first impression in this State. Both the letter and the spirit of the statutes appear plainly to require that when a partnership is dissolved by the death of a member, its affairs shall be wound up under the auspices of the probate court. Ample provisions are found to secure and facilitate this purpose. Priority of right in administering remains with the survivor. But if he fails to act by giving bond within the time limited —that is, within thirty days after letters are granted on the estate of the deceased, the administrator of that estate is commanded to give bond, and on doing so he becomes entitled to all the partnership property, books and papers. The statutes provide for the allowance of demands by the court which the survivor rejects, for the classification of demands, for citing the survivor, for the refusal by the court to allow him credit for unjust payments, and for general conformity in the administration to the course pursued with individual estates. To say that all this means no more than that the probate court shall have jurisdiction, and that the estate shall be settled under its direction, provided the surviving member does not choose to make a general assignment that would render

any proceeding in that court useless, would in my opinion entirely defeat the purpose of the law which intends to secure to the heirs, devisees and creditors of the deceased the guardianship and protection of the probate court in the settlement of his partnership as well as his private estate. Former decisions of this court have recognized the common law right of the surviving member to pay off demands without their allowance, to prefer creditors, and sell the property without an order. *Bredow v. Mutual Savings Institution*, 28 Mo. 181; *Crow v. Weidner*, 36 Mo. 412; *Denny v. Turner*, 2 Mo. App. 52; *Easton v. Courtwright*, 84 Mo. 27; *Hargadine v. Gibbons*, 114 Mo. 561. Perhaps all the powers which the survivor enjoyed at common law, except to assign, at least all that are recognized as still belonging to him in the foregoing cases, may be exercised consistently with our administration law. The essential duty laid on the survivor, where there is no statute on the subject, is that he apply the assets to the payment of the firm debts. Our statutes require in addition that he furnish bond for the faithful performance of his trust. If he complies by giving bond and honestly using the property in his hands to discharge the partnership obligations, it may be that he can still prefer creditors, pay some before others, secure some by mortgage or otherwise, sell the property without an order from the court, and use the proceeds to pay just demands according to his preference and pleasure. All these things might be done consistently with the winding up of the estate in the probate court, for he could make report of them in his settlements, and be allowed credit for the proceeds disbursed in payment of valid claims whether distributed *pro rata* or by preference. The requirement of the law that the estate be settled in that court would not thereby be evaded, nor its jurisdiction ousted, though the doctrine in

Maine by which he is refused power to act until he gives bond, and is placed from the outset under the direction of the courts of probate, more perfectly accomplishes the intention of the statutes. But if the surviving partner executes a general assignment of the partnership property, an entirely different situation arises. He puts it out of his power to wind up the estate in probate in any mode, and likewise puts it out of the power of the administrator of the deceased member to perform the duty imposed on him by the law of taking charge of the property and making settlement when the survivor does not. He devolves on a stranger the trust which the law devolves on him or, in case of his default, on the administrator of the deceased member's estate. For he is a trustee and is expressly recognized as such in the cases above cited from this court. *Bredow v. Mutual Savings Institution*, 28 Mo. 181. "The right of the survivors to take the estate and pay the debts has ever been construed as a trust." *Hargadine v. Gibbons*, 114 Mo. 561, *loc. cit.* 566. By assigning, he shifts the duty of allowing demands, the ownership of the property, payment, distribution, giving bond, in short, the entire responsibility to an assignee who will not and can not recognize the probate court; he shifts jurisdiction of the estate, the allowance of demands, the approval of bonds, the passing of his accounts, the protection of the interests of creditors and heirs to another forum. A general assignment has the peculiar effect of rendering an administration in a court of probate impossible, which is not done even when the survivor proceeds to settle without bond; for then he is liable to be ousted at any time by the representative of the deceased.

If a surviving partner may assign, then, whether partnership affairs shall be settled in the statutory forum, depends on the will of the survivor instead

of the law.    This result was illustrated in the *Indiana* case, *supra*.    The language of the Supreme Court of Kansas in *Shattuck v. Chandler*, 40 Kan., *supra*, is appropriate on this point:    "We think the legislature intended by this provision to provide a trustee to close up the partnership upon the death of a member of the firm, and that the statute creates a trust in the surviving partner which he has no power to transfer to another, except as it is transferred by his refusal to administer upon the partnership estate, in which event it is transferred by operation of law to the administrator of the deceased partner's estate.    It was said in *Carr v. Catlin*, 13 Kan. 395, in speaking of this class of administrators:    "He is neither more nor less than a special trustee as to this property and this class of debts. The rule is that where a form of procedure is provided by statute, and the manner of doing a particular act or thing is pointed out, it precludes the doing of it in any other manner or form.    *If the surviving partner under our statutes may transfer his trust to an assignee, then the assignee would close up the entire partnership business in the court having jurisdiction of the assignment and estate thereunder, and would be entirely free from the jurisdiction of the probate court, and the statute above cited would be without any force or effect.*    Did the legislature intend that this statute might be regarded or not, at the pleasure of the surviving partner?    We think not. This means of winding up a partnership business has been prescribed by the legislature, and in the absence of any proof of the statutes of Illinois to the contrary, we must presume that this is the manner of closing up partnership estates in that State.    We therefore think the court erred in permitting the second assignment to be given in evidence, as it gave the plaintiff no authority or right to commence the action."

The same argument received convincing support

from the Supreme Court of Maine in treating statutes even verbally like ours: ''It is thus evident that the object and intent of the statute was, that ample security should be given for the protection of all interested as a preliminary to granting administration on the partnership estate, whether its affairs were to be closed by one of its surviving members or by the administrator on the estate of the deceased partner. The necessity of applying to a court of equity is obviated by giving the judge of probate the same powers in the case of a partnership administration as in any other case of administration. It places the property under the control of an administrator, who has given security for the faithful performance of his duties, and who may be removed upon proof of misconduct. It thus most effectually protects the rights of the creditors and the representatives of the deceased partner, which before were in peril from the fraud or negligence of the survivor, and affords a jurisdiction where all controversies may be summarily determined and speedily enforced. It substitutes an administration with security for its due performance for one without. It requires not merely that the estates of the deceased partner but of the firm of which he was a member should be settled through the probate office and under the supervision of the judge of probate.'' *Cook v. Lewis,* 36 Me. 340.

These views commend themselves as sound and tending to prevent confusion in the law governing the settlement of firm affairs. That partnership estates must be administered in the probate court when the relation has been dissolved by death, has been determined by explicit decisions in this State. *James et al. v. Dixon,* 21 Mo. 538; *Ensworth v. Curd,* 68 Mo. 282. So, if the clear letter of the statutes could be strengthened by construction, it has been done.

If the foregoing views are correct, then Murdock's

deed to Priest, in so far as it attempted to convey the partnership property, was void from the first and on its face. It created no assignment of which the circuit court could take jurisdiction and left the estate in the probate court with the jurisdiction of that tribunal unimpaired. It results that all the proceedings of the circuit court with reference to the partnership property which Priest assumed to take under the pretended assignment were outside of its jurisdiction, and that the writ prayed for to prohibit it from proceeding further ought to be granted. It is accordingly so ordered.

PER CURIAM.—The foregoing opinion of R. L. GOODE, Special Judge, is adopted as the opinion of the Court *in banc*, MACFARLANE, SHERWOOD and ROBINSON, JJ., concurring therein. GANTT and BURGESS, JJ., concur in the first and second paragraphs but dissent from the third and the result reached. BRACE, J., concurs in the first paragraph, expresses no opinion on the second, and dissents from the third and the result. BARCLAY, C. J., did not take part in the decision of the case.