CLARA B. GROVES EXECUTRIX OF THE ESTATE OF ALBERT B. GROVES, APPELLANT, v. ALBERT A. AEGERTER, SURVIVING PARTNER, RE-SPONDENT.—42 S. W. (2d) 974.

St. Louis Court of Appeals.   Opinion filed November 3, 1931.

*Taylor, Mayer & Shifrin* and *Rassieur, Long & Yawitz* for appellant.

*Igoe, Carroll, Higgs & Keefe* and *Dubinsky & Duggan* for respondent.

SUTTON, C.—This is a proceeding instituted in the probate court of the City of St. Louis, for the revocation of authority of the defendant, Albert A. Aegerter, to administer a partnership estate as surviving partner.

On November 30, 1925, Albert B. Groves, a member of the partnership firm composed of said Albert B. Groves and said Albert A. Aegerter, doing business under the firm name of Albert B. Groves, Architect, died, and on December 1, 1925, said Albert A. Aegerter filed his application as surviving partner of said partnership to administer the partnership estate, and upon giving bond in the sum of $200,000, with the London & Lancashire Insurance Company, as surety qualified as such surviving partner, and on January 27, 1926, filed his inventory of the estate of said partnership. On December 14, 1926, Clara B. Groves, widow of Albert B. Groves, and executrix of his individual estate, filed her petition in the probate court for the revocation of the authority of said Albert A. Aegerter to administer said partnership estate as surviving partner. On January 21, 1927, defendant, as such surviving partner, filed his first settlement in said probate court. On March 15, 1927, the petition to revoke the defendant's authority to administer on said estate as surviving partner was heard, and on June 6, 1927, the probate court entered judgment revoking his authority to administer said estate, directing him to make settlement of his accounts as such surviving partner up to the time of the said revocation of authority, and appointed Henry A.

Baker as administrator *de bonis non* of said partnership estate.

From this judgment defendant appealed to the circuit court. The hearing of the petition in the circuit court, before the court, without a jury, resulted in a judgment affirming the judgment of the probate court. On March 15, 1930, defendant filed his motion for a new trial, and on May 26, 1930, said motion for a new trial was sustained by the court on the grounds, (1) that the judgment is against the weight of the evidence, and (2) that the judgment is against the law and against the evidence under the law. From the order of said court granting defendant a new trial plaintiff has appealed to this court.

The appellant insists here that the undisputed evidence shows the defendant guilty of such misconduct in the management of the partnership estate as to render the revocation of his authority to administer thereon imperative, and that, therefore, the trial court erred in granting respondent a new trial.

The respondent insists that the probate court has no power to remove a surviving partner, who has given bond and taken charge of the partnership property, for misconduct or neglect of such surviving partner. He says that the remedy is on the bond of the surviving partner, or by proceedings in equity; that the assets of the partnership must be administered and disposed of as at common law, except in so far as the rights and duties of the surviving partner are limited and controlled by the statute; and that there is no provision in the statute authorizing the probate court to oust the surviving partner of the partnership assets and deprive him of his common-law right and duty to wind up the partnership business.

The general administration law (Sec. 43, R. S. 1929) provides for the removal of an ordinary executor or administrator if he become of unsound mind, or be convicted of any felony or other infamous crime, or has absented himself from the State for the space of four months, or become an habitual drunkard, or in any wise incapable or unsuitable to execute the trust reposed in him, or fail to discharge his official duties, or waste or mismanage the estate, or acts so as to endanger any co-executor or co-administrator, or fails to answer any citation or attachment to make settlement, upon complaint in writing made by any person interested, and a finding by the court that the complaint is just. The law relating to the administration of partnership assets, being article 3 of the administration law (R. S. 1929), contains the following pertinent sections:

"Sec. 81. In case of the death of a member of a co-partnership, the surviving partner or partners, resident in this State, shall administer the effects and estate of the co-partnership in the county in which the co-partnership business was conducted, on giving bond as hereinafter provided.

"Sec. 92. The administration upon partnership effects, whether by

the surviving partner or executor or administrator of the deceased partner, shall in all respects conform to administrations in ordinary cases, except as otherwise herein provided; and the person administering upon partnership effects, and his securities on his official bond, shall perform the same functions and duties, be governed by the same limitations, restrictions and provisions, be subject to the same penalties, liabilities and actions, as other administrators and their sureties.

"Sec. 93. All surviving partners who undertake the management of partnership estates, as provided by law, and their sureties, shall have the same powers as are conferred upon and be subject to the same duties, penalties, provisions and proceedings as are enjoined upon or authorized against executors and administrators and their securities by law, so far as the same may be applicable."

In State ex rel. Richardson v. Withrow, 141 Mo. 69, 41 S. W. 980, the authority of the surviving partner to make a general assignment of the partnership property for the benefit of creditors was involved. It was held that the surviving partner had no such authority. In so holding, the court said:

"But if the surviving partner executes a general assignment of the partnership property, an entirely different situation arises. He puts it out of his power to wind up the estate in probate in any mode, and likewise puts it out of the power of the administrator of the deceased member to perform the duty imposed on him by the law of taking charge of the property and making settlement when the survivor does not. He devolves on a stranger the trust which the law devolves on him or, in case of his default, on the administrator of the deceased member's estate. . . . By assigning, he shifts the duty of allowing demands, the ownership of the property, payment, distribution, giving bond, in short, the entire responsibility to an assignee who will not and cannot recognize the probate court; he shifts jurisdiction of the estate, the allowance of demands, the approval of bonds, the passing of his accounts, the protection of the interests of creditors and heirs to another forum. A general assignment has the peculiar effect of rendering an administration in a court of probate impossible, which is not done even when the survivor proceeds to settle without bond; for then it is liable to be ousted at any time by the representative of the deceased. . . .

"The same argument received convincing support from the Supreme Court of Maine in treating statutes even verbally like ours: 'It is thus evident that the object and intent of the statute was, that ample security should be given for the protection of all interested as a preliminary to granting administration on the partnership estate, whether its affairs were to be closed by one of its surviving members or by the administrator on the estate of the deceased partner The necessity of applying to a court of equity is obviated by giving

the judge of probate the same powers in the case of a partnership administration as in any other case of administration. It places the property under the control of an administrator, who has given security for the faithful performance of his duties, *and who may be removed upon proof of misconduct.* It thus most effectually protects the rights of the creditors and the representatives of the deceased partner, which before were in peril from the fraud or negligence of the survivor, *and affords a jurisdiction where all controversies may be summarily determined and speedily enforced.* It substitutes an administration with security for its due performance for one without. It requires not merely that the estates of the deceased partner but of the firm of which he was a member should be settled through the probate office and under the supervision of the judge of probate.' [Cook v. Lewis, 36 Me. 340.]

"These views commend themselves as sound and tending to prevent confusion in the law governing the settlement of firm affairs. That partnership estates must be administered in the probate court when the relation has been dissolved by death, has been determined by explicit decisions in this State. [James et al. v. Dixon, 21 Mo. 538; Ensworth v. Curd, 68 Mo. 282.] So, if the clear letter of the statutes could be strengthened by construction, it has been done."

In Ensworth v. Curd, cited by the court in the Richardson case, the court said:

"A court possessed of general equity powers is undoubtedly the proper tribunal in which to settle the affairs of a co-partnership between the living. But when the co-partnership has been dissolved by the death of one of the partners, the settlement must be made under the provisions of the administration law, and for this purpose the probate court exercises to a certain extent chancery powers. [Pearce v. Calhoun, 59 Mo. 271.] . . . The act creating the probate court of Buchanan invested that court with exclusive original jurisdiction 'to hear and determine all suits and other proceedings instituted against executors and administrators upon any demand against the estate of their testator or intestate' and further declared that all laws relating to the administration of estates should be applicable to and in force in said probate court. [Session Acts 1865-6, p. 83.] The law imperatively requires that when a co-partnership is dissolved by death, the affairs of the firm shall be settled in administration. With the wisdom of this enactment we have nothing to do. The law is so written, it was competent for the Legislature so to enact, and it is our duty to enforce it. . . . As far as the jurisdiction of the probate court extends, it is exclusive, and it certainly extends to the settlement of the accounts of the firm. [Dodson, Admr., v. Scruggs, Admr., 47 Mo. 285; Cones v. Ward, Admr., 47 Mo. 289; Titterington v. Hooker, 58 Mo. 593; Pearce v. Calhoun, 59 Mo. 271; Wernecke v. Kenyon's Admr., 66 Mo. 284.]"

In Troll v. St. Louis, 257 Mo. 626, 168 S. W. 167, the court, reaffirming the doctrine announced in the Richardson case, said:

"*Ex industria* and with vigor, a thrust is made by defendants at the soundness of the doctrine of State ex rel. v. Withrow, 141 Mo. 69. With the same set purpose and vigor that thrust is parried by plaintiff. As already pointed out, the judgment in that case was to the effect that, in the state of our statutes in 1873, jurisdiction of a partnership estate could not be transferred from the probate court to the circuit court by means of a voluntary assignment of the surviving partner under our statute on assignments, hence the deed of assignment was void. We are asked to explode that doctrine and to rule that a surviving partner had the clear legal right in 1873 to make a general assignment of the partnership estate for the benefit of its creditors and thus put the burden of marshalling the assets and administering the estate on the assignee and within the jurisdiction of the circuit court. Counsel leave no stone unturned in their attack and defense of that case. The general law of partnerships on the right of a surviving partner to settle the estate, the early statutes, the evolution of those statutes by amendments making inroads on the general law, precedents, reason—all have been levied upon and brought into play on one side and the other in the glow and ardor of the work. While the discussion has been illuminating and the field an inviting one for exploration, while we have been both informed and interested, yet it boots nothing; for we have not been persuaded to overturn that case. What say the maxims: Obedience is miserable when the law is uncertain. Where the law is uncertain there is no law. There was need of a rule and the case established the rule. No harm or injustice can spring from it. *Stare decisis.*" [See, also, Caldwell v. Hawkins, 73 Mo. 450.]

In Titterington, Admr., v. Hooker, 58 Mo. 593, the court stated the comprehensive jurisdiction of the probate court over the estates of deceased persons, as follows:

"We are of the opinion that the precise and simple yet effective provisions of our administration law, whereby the whole estate of a decendent, both real and personal, may be subjected to the payment of his debts, were designed to entirely supersede the more cumbrous machinery of the common law, and that the whole doctrine of equitable assets, marshalling assets in equity for the payment of debts, and bills for discovery of assets and account, is without application here, save in so far as the principles underlying those proceedings may be invoked in illustration or explanation of analogous remedies afforded by our statute."

In Gray v. Clement, 12 Mo. App. 579, the court ruled that: "The probate court has exclusive original jurisdiction to settle the accounts of partnership estates, which cannot be ousted by proceedings in equity in the circuit court."

Of course, jurisdiction to remove the surviving partner for misconduct or neglect in the administration of the partnership estate must reside somewhere. We do not understand that respondent disputes this, but he says that the jurisdiction rests in equity. But the only remedy to be found by resort to a court of equity is the appointment of a receiver. This would completely oust the probate court of its jurisdiction over the settlement of the partnership estate and transfer the same to the circuit court, just what the decisions say may not be done. We think that the jurisdiction to remove the surviving partner rests exclusively in the probate court.

Respondent relies on Green's Admr. v. Virden, 22 Mo. 506. In that case the court held that a surviving partner could not be removed by the probate court and deprived of his right to the control and management of the partnership effects under the provisions of the statute then in force, and in so holding, the court said: "It would be against all principle to assume by implication a power of taking away the right of control which a man has over his own property." But the present provisions of the statute conferring jurisdiction in the probate court over the administration of partnership estates are much more comprehensive than the provisions of the statute then in force.

But though the probate court has jurisdiction to remove the surviving partner for misconduct, upon a just complaint, it does not follow that the surviving partner is an ordinary administrator. He is not an ordinary administrator, neither indeed can be. As surviving partner he administers or rather manages and controls, his own property. He owns in his own right a partner's share in the partnership assets, and he has the legal title to the whole as trustee for the purpose of winding up the partnership business. He is personally responsible for the debts of the partnership. The death of his partner does not relieve him of this responsibility. It is his interest and right to have the possession, management and control of the assets and the business, to the end that the assets may be properly conserved and applied to the payment of the partnership debts. Both his interest and his familiarity with the business peculiarly fit him for the management and control of the business of the partnership in winding it up. This is strikingly illustrated in the present case. The deceased and respondent were partners in the business for a period of twenty-five years. The relationship was so satisfactory, and such was the confidence the deceased had in him as his partner, that he expressed in his will the desire that his own son form a partnership with him to continue the business after his death.

The probate court in removing a surviving partner and appointing an administrator *de bonis non* to administer the partnership estate, as well as in the settlement of such estate, manifestly exercises chancery powers, or powers in their nature equitable, which have been by the statute merely transferred from the circuit court to the probate

court, to the end that a summary and speedy determination may be had under the procedure prescribed by the statute. The chancery powers exercised by the probate court in removing the surviving partner and appointing an administrator *de bonis non* is analogous to the chancery powers exercised by a court of equity in removing a surviving partner and appointing a receiver for the partnership estate. In view of this, it may not be impertinent to here inquire as to the rule obtaining in equity in proceedings for the removal of a surviving partner. The rule is stated in 47 C. J. 1049, as follows:

"Regardless of the survivor's general right, a court of equity may, upon proper application, take from him the possession and control of the partnership assets and appoint a receiver when partnership property is being mismanaged, wasted, improperly commingled with that of the survivor, or when the survivor is faithless to his duty, as in continuing the business for a purpose other than to close it, or is delaying unreasonably in closing the affairs, or if property is in danger of being dissipated or destroyed; but the survivor will not, by the appointment of a receiver be deprived of his right to close up the partnership affairs if he is responsible and acts in good faith, even though he be insolvent and has preferred certain partnership creditors, or even if he continues the business beyond the time allowed by law if it appears that he is solvent, is not permitting the assets to be wasted, and can comply with any final decree in favor of the deceased partner's estate; nor will he be deprived of his right to liquidate in any other way than by the appointment of a receiver."

The difference between the winding up of a partnership estate by the surviving partner and the administration of an estate by the administrator of a decedent has not been extinguished by the statute. The difference is fundamental, and should be kept in view in determining whether or not a complaint made against the surviving partner for his removal is just. [Hargadine v. Gibbons, 45 Mo. App. 460; Woerner's American Law of Administration (2 Ed.), p. 300; Easton v. Courtwright, 84 Mo. 27; Gregory v. Menefee, 83 Mo. 413.]

Manifestly, the surviving partner ought not be ousted of his control of the partnership assets and deprived of his right to close up the partnership business except upon a substantial showing of such misconduct as is calculated to endanger the estate or unreasonably interfere with its orderly administration.

In the present case, the chief ground urged for the removal of the respondent is that he withholds from the partnership estate several contracts made by him in his own name, to which the estate is entitled. The respondent claims that he has not withheld these contracts, for the reason that they are his own personal property.

The evidence shows, without dispute in the record, that these contracts were merely in prospect, and had not been actually entered

into during the lifetime of the decedent. It is true that preliminary sketches had been made and interviews had been had respecting these contracts before his death, but none of them had been consummated. At the time of the decedent's death there were twenty to thirty contracts existing in favor of the partnership which had not been completed. The inventory shows an estate amounting to $101,-903.13, consisting chiefly of these existing contracts. That respondent carried these contracts faithfully to completion and collected and accounted for the fees therefor, to which the estate is entitled, can hardly be questioned. At least, there is no evidence to the contrary. The several contracts which the respondent took in his own name, and which the appellant claims should have been taken in the name of the partnership, and so carried out and completed, is the basis of practically all the complaints made against the respondent. But since these several contracts were not consummated in the lifetime of the deceased, the respondent was without authority to enter into such contracts on behalf of the partnership estate, after decedent's death. It is settled law that a surviving partner has no power to bind the estate of the deceased partner by making new contracts unless such new contracts are authorized by the will of the deceased partner, or by the partnership agreement. The right of the surviving partner to bind the partnership by contracting further obligations ceases at once upon the death of his partner. If the surviving partner continues business he does it at his own peril. He has no right to expend the money of the firm in new enterprises. He has no authority to continue the business as distinguished from winding it up. If he does continue it he alone is liable for debts incurred and he must answer for all depreciation and loss due to such continuance. [Exchange Bank v. Tracy, 77 Mo. 594; Andrews v. Stimson, 254 Ill. 111.] Appellant concedes that this is the law, but says that it has no application here for the reason that the respondent promised the appellant that notwithstanding he took these contracts in his own name, he would carry out and perform the contracts on behalf of the partnership estate, and account to the estate for the fees derived therefrom, and that he used the labor and equipment of the estate in the completion and consummation of the work, and that, therefore, the fees derived from these contracts in equity belong to the estate. There was evidence tending to show that such promise was made. The evidence shows, too, that the appellant, shortly after the death of her husband, told the respondent, and agreed with him, that if a partnership was formed between her son and the respondent these several contracts now in dispute should belong to such partnership, and that such partnership should have the fees derived therefrom. The charge that the respondent used the labor and equipment of

the partnership estate in carrying out and completing these contracts is based upon evidence to the effect that respondent in carrying out these contracts, used the office and employes of the partnership, and the preliminary sketches made by the partnership when these contracts were in prospect and negotiations were being carried on to obtain such contracts. These preliminary sketches were of trifling value and were of no value at all to the partnership estate if the contracts in prospect were not consummated by the partnership. The evidence shows that respondent used the office of the partnership as surviving partner after the death of decedent, and paid the rent therefor out of the partnership funds, and also retained in his employment as surviving partner the same employees as were in the employ of the partnership, until April 1, 1926. During this time he was carrying to completion the twenty or more contracts entered into by the partnership in the lifetime of the decedent, from which, his settlement shows, he derived, and accounted for, fees amounting to approximately $77,000. The value of the time spent by the employes of the partnership and the use of the equipment of the partnership estate for the respondent individually, on the several contracts in controversy, was obviously negligible, and we do not understand that the respondent makes any contention that he is not liable to the partnership estate therefor. We are not convinced that this evidence shows, as is asserted by appellant, that the respondent was attempting to purloin the assets of the estate.

The appellant says that there is a bona fide controversy as to whether the fees derived from the several contracts in controversy belong to respondent or to the partnership estate, and that, therefore, the respondent's interests are antagonistic to the interests of the estate and that he should for this cause be ousted from the management and control of the assets and business of the partnership estate. These several contracts had been completed at the time of the trial, and the amount of the fees derived therefrom was agreed upon at the trial. It does not appear that any effort was made on the part of the respondent to conceal the fees derived from these contracts, or that he was acting in bad faith, nor does it appear that the estate is in any danger whatever of losing the fees derived therefrom, if it shall eventually be determined that such fees properly belong to the estate. We can see no reason, under the evidence disclosed by this record, why respondent should be adjudged an unsuitable person to possess, manage and control the assets and business of this large estate in which he owns in his own right a one-third interest as surviving partner, and be ousted of his common-law right to possess, manage and control the same, on account of the controversy that has arisen over these contracts.

Appellant relies on State to use of Miller's Admr. v. Bidling-maier, 26 Mo. 483. In that case, Adolph Kehr, as administrator of one estate, undertook to settle with himself as administrator of another estate, when the interests of the estates were antagonistic, and the court treated the settlement as a nullity. That case is obviously no authority for the appellant's position here. When the respondent here comes to make final settlement as surviving partner of the partnership estate now in his charge, he will make settlement, not with himself as surviving partner, but with the executrix of the decedent's individual estate, the same executrix who is now seeking to oust him from the control and management of the partnership estate. When he makes his final settlement she will have ample opportunity to file exceptions and try out the rights of the parties with respect to the fees derived from the disputed contracts. She will be amply protected by the respondent's bond in the sum of $200,000. Indeed, so far as the evidence shows, the respondent is himself financially able to answer for such fees.

Padgett v. Smith, 114 Mo. App. 307, relied on by appellant, involved a curator of the estate of a minor, and is otherwise distinguishable on its facts from the case at bar.

Davis v. Roberts (Mo. App.), 226 S. W. 662, also relied on by appellant, involved an ordinary administrator administering the individual estate of a decedent, and not a surviving partner in charge of a partnership estate. Moreover, the asset in controversy constituted practically the whole of the decedent's personal estate. We do not regard that case as applicable here.

We are unwilling to hold that merely because a bona-fide controversy arises as to the ownership of assets of relatively small value, the surviving partner in charge of a large partnership estate, must be regarded as an unsuitable person to manage and control the assets and business of the estate, and must, therefore, give up his common-law right to manage and control the partnership assets and business, in which he owns in his own right a partner's share, or give up his claim, however just it may be, to the disputed assets, especially, where, as here, the disputed assets are fully protected by a solvent bond, and the surviving partner himself is financially responsible and owns in his own right a share in the undisputed assets of the estate of a value greatly in excess of the value of the disputed assets.

Complaint is made relative to salaries paid by respondent to employes in carrying out and completing the contracts held by the partnership and entered into in the lifetime of the decedent. It appears that the salaries paid to these employes were paid to them for the actual time devoted by them to the business of carrying out the contracts. If these payments were improper or excessive, and

the evidence here does not show that they were, the matter can readily be taken care of on exceptions to the final settlement.

The charge is also made that the respondent has appropriated the good will of the partnership unto himself and others. It is difficult to believe that this charge is made in sincerity, since the record shows that on January 15, 1926, the appellant, and Theron A. Groves, her son, and Charles M. Gray, an employe of the partnership, formed a corporation under the corporate name of "Albert B. Groves, Architect," and proceeded to do business under that name, even competing with respondent in bidding for the very contracts now here in controversy, while at the same time occupying the office of the partnership, and thus appropriated to their own use, the exact name under which the partnership did business for twenty-five years prior to the decedent's death; whereas, on the other hand, the respondent, after ineffectual attempts had been made for the formation of a partnership between him and Theron A. Groves, formed a corporation, in the early part of 1926, under the name of Aegerter & Bailey.

The failure of respondent to answer to a citation issued by the probate court is also urged as a ground for his removal. We have examined the record with respect to this, and we are not persuaded that it shows such a disobedience to the citation, or the orders of the court, as to justify respondent's removal. Moreover, it is difficult to see how the appellant could have based a right of removal on the failure of the respondent to answer the citation, since she filed her petition some time before the day on which respondent was required to answer the citation, and, in fact, does not, in her petition, charge respondent with delinquency in failing to answer to the citation, but charges merely, "that he is now under citation." But the statute does not make this a ground for removal. See Section 220, Revised Statutes 1929, which is relied on by appellant.

The settlement filed by respondent shows receipts amounting to $77,776.59, most of which are fees from contracts, and shows expenditures amounting to $34,601.61, leaving a balance of $43,174.98. The expenditures consist of two hundred fifty-nine items, ranging in amounts from seventy-five cents to $2,500. The settlement shows the amount and date of each expenditure, and to whom and for what paid, as required by Section 214 of the administration law. Appellant concedes that proper vouchers were filed with the settlement for ninety-three of the items of expenditures shown in the settlement, as required by said section, but says that no proper vouchers were filed for the other items, and that for these items only checks were filed, indorsed by the payees, and marked paid by the bank on which they were drawn, and appellant says that because these checks were filed instead of receipts signed by the payees, the

respondent ought to be removed from the control and management of the assets and business of the partnership. We are unable to accept this view.

Appellant makes further complaint of the condition of the respondent's partnership bank account, to the effect that the bank account, when compared with the settlement filed by respondent, does not accord with the settlement, and shows withdrawals not reflected in the settlement, and that while the settlement shows a balance on hand of $43,174.98, his bank account shows a balance of only $10,436.24 at the date of the filing of the settlement. It is conceded that the settlement properly accounts for all the receipts shown by the bank account. The settlement prays for permission of the court to make distribution of $37,500 out of cash on hand, $25,000 to be distributed to the appellant as executrix, and $12,500 to the respondent. Whether or not the probate court approved this settlement and ordered distribution as prayed, is not shown, but the evidence shows that distribution was actually made in accordance with this prayer, and that respondent paid to appellant as executrix, $25,000. This distribution was made at or about the time the settlement was filed, and the bank account shows that after this distribution was made, a balance of $10,436.24 still remained to respondent's credit in the bank, as shown by the bank account. The distribution of $25,000 to the appellant was presumably made by check. The check was not in evidence. What bank it was drawn on, and on what account, does not appear. It is certain, however, that it was not drawn on the partnership account heretofore referred to. Of course, the appellant was not required to keep all the partnership funds in any one particular bank. In any event, the evidence very clearly shows that the respondent had on hands ample funds to cover the balance shown by his settlement.

It should be kept in mind that this is not an action for an accounting, nor is it a proceeding upon exceptions to the final settlement of the surviving partner. It is a proceeding to oust the surviving partner from the possession and control of the partnership assets and business, for misconduct in the management of the business. The burden is on the party seeking his removal to show that he has been guilty of such misconduct as to justify his removal, and not on the surviving partner to show the contrary. We are not convinced that the appellant here has so successfully carried this burden as to warrant this court in interfering with the action of the trial court in granting a new trial. The record discloses no discrepancy in the handling and accounting for the $77,776.59 shown by the settlement filed, nor in the handling of the funds derived from the work completed subsequent to the filing of this settlement. The charges made against respondent are predicated chiefly upon

the testimony of the decedent's son, who, though in the employ of his father for over eight years, received the lowest salary of any of the salaried employes of his father. The association between deceased and the respondent covered a period of over twenty-five years' duration. Respondent must have been a man of high character and ability, else the decedent would not have expressed a desire in his will for a partnership between him and his son, to carry on the business after his death. We do not think the evidence shows that he has become, since the death of the deceased, an unfit person to wind up the partnership estate as surviving partner, or that the estate will suffer any loss or disadvantage by permitting him to do so. If there is any substance in the charges made against him, and he has been derelict in any respect complained of, or fails in any respect to render a proper account of his stewardship, such matters may readily be adjusted on exceptions to the final settlement, and the estate is amply protected by a bond in the sum of $200,000.

We are not persuaded that the court committed error in granting respondent a new trial. The Commissioner recommends that the order granting a new trial be affirmed and the cause remanded.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The order of the circuit court granting a new trial is accordingly affirmed and the cause remanded. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.