JAMES TITTERINGTON, Adm'r, Plaintiff in Error, *vs.* EUGENE HOOKER, *et al.,* Defendants in Error.

58 593
96 115
58 593
38a 245
58 593
45a 189
58 593
88a 422

1. *Administration—Bill in equity against heirs for sale of lands, will not lie after final settlement.*—Under the administration law of this State, the failure of personal assets of the estate will not, after final settlement of the administration, authorize a bill in equity on behalf of the creditors against the heirs, to have lands descended to them, sold to satisfy their claims.

Our statute of administration has entirely superseded the machinery of the common law; and the whole doctrine of equitable assets, marshalling of assets in equity, and bills for discovery of assets and account, is without application here, save in so far as the principles underlying those proceedings may be invoked to illustrate or explain analogous remedies afforded by our statute.

*Error to Laclede Circuit Court.*

*Massey, McAfee & Phelps,* for Plaintiff in Error.

I. An estate by descent renders the heir liable for the debts of his ancestor to the value of the property descended, and he holds the land subject to the payment of the ancestor's debts. (Metcalf vs. Smith's heirs, 40 Mo., 572; 4 Kent. Com. [12th Ed.], 419 ; Van Weazel vs. Wycoff, 3 Sandf. Ch., 528; Thompson vs. Brown, 4 John. Ch., 619; Clark vs. Hugh, 52 Ill., 427; 2 Spence Eq., 388.)

*J. C. Young, R. P. Bland & G. W. Bradfield,* for Defendants in Error.

I. It is manifest upon the face of the petition that plaintiff had an adequate and ample remedy at law. (Wagn. Stat., 100, § 47.) All he had to do was to call the attention of the Probate Court of Laclede County to the allowance of his demand, and the classification thereof, and show that the personal estate was insufficient to discharge the debts of decedent and the court would have ordered the sale of the real estate ; or he could have forced the administrator to make application to the Probate Court for the sale of the real estate of decedent. (Wagn. Stat., 96, §§ 23, 24.)

A court of equity will not entertain jurisdiction for the purpose of enabling the creditors of an estate to collect their demands from the administrator of such intestate, when the

remedy at law is ample and adequate. (Peas vs. Scranton, 11 Ga., 33; Trustees, etc. vs. Robins, 19 Ga., 134.)

II. The petition shows a final settlement of the estate, from which the plaintiff failed to appeal—hence, he cannot now complain. (Picot, Adm'r vs. Bates, 47 Mo., 390; Dullard, Adm'r vs. Hardy, 47 Mo., 403; Murray vs. Roberts, 48 Mo., 307; Barton vs. Barton, 35 Mo., 158.)

Hough, Judge, delivered the opinion of the court.

This cause was heard at the November term, 1872, of the Laclede Circuit Court, on a demurrer to the following petion:

Plaintiff states that he is the administrator of the estate of Lemuel Elam, deceased, late of said county, and that letters of administration were duly granted him by the County Court of said county, and that the defendants, Eugene Hooker and Eunice Hooker, are the heirs at law, and only heirs at law, of W. A. Hooker, deceased, late of said Laclede county, who died intestate, and as such heirs at law they are the owners in fee simple, subject to the dower of their mother, of the following described real estate situated in said county, viz: The south-west quarter of the south-west quarter, and the north-east quarter of the south-west quarter, and the west half of lots one and two of the north-east quarter, and the north-west quarter of the south-east quarter, all in section number four (4,) township number thirty-four (34,) range number sixteen (16,) west of the fifth principal meridian; and which said real estate descended to them from the said Wm. A. Hooker, deceased, who was their father; and that the defendants now are, and for a long time past have been in possession of said real estate.

Plaintiff states that letters of administration were duly granted by the County Court of Laclede county on the estate of said W. A. Hooker, deceased, to one C. B. Churchill, and that some time after the expiration of three years after the grant of letters of administration as aforesaid, the said estate was reported by the said administrator as set-

tled, and his account as such administrator was closed by the Probate Court of said county, and he discharged from his administration.

Plaintiff further states that said Lemuel Elam, in his life-time, obtained a judgment against the administrator of said Wm. A. Hooker in the Circuit Court of Laclede county, Mo., for the sum of $519 75 debt, and $280 08 damages and costs of suit; and that after the death of said Hooker, and after letters of administration were granted on his estate, said judgment of the Circuit Court was exhibited at the said County Court for allowance and classification, and that the same was allowed for a large sum, viz: $902 17, and was classed in the fourth class of demands; and plaintiff states that said judgment so allowed by the said County Court is still in full force, and that neither the same, nor any part thereof, has been paid or satisfied by the administrator of said Hooker, deceased, nor by any one else; and plaintiff further states the administrator of the said Hooker did not pay any part of said judgment or allowance, although ordered to pay off the demands established against Hooker's estate; and he is informed and so believes that all the personal property of the said Wm. A. Hooker which came to the hands of this said administrator was exhausted and disposed of in paying the demands against said estate, and in defraying the expenses of administration.

Plaintiff charges that said Churchill, who was administrator of the estate of Wm. A. Hooker, deceased, is insolvent, and that he has no adequate relief at law. Plaintiff therefore prays the court to render judgment in his favor for the amount of said judgment or allowance, established as aforesaid against the estate of said Hooker, deceased, with interest thereon at the rate of ten per cent., the "plaintiff averring that rate of interest was the rate of interest of the demand upon which judgment was rendered, and for the costs of proceedings in the Circuit Court aforesaid adjudged against the defendant in that suit," and that if said judgment shall not be paid that the same shall be levied of the aforesaid

real estate, or so much thereof as shall be necessary to satisfy said judgment and costs of suit, and for other proper and suitable relief.

The demurrer states the following grounds of objection: 1st. That said petition contains no equity, and alleges no matter which entitles plaintiff to any equitable relief, and does not state facts sufficient to constitute a cause of action; 2nd. That it is manifest upon the face of said petition that plaintiff has an ample and adequate remedy at law, which he is now at liberty to pursue, or which by his own laches and neglect he has failed to pursue in the proper time and appropriate way.

The question presented for determination in this case is whether, under our law, on a failure of personal assets and after final settlement, a bill in equity will lie on behalf of a creditor of an intestate against his heirs to whom lands have descended from him, to have such lands sold to satisfy the demands of such creditor. Whenever real estate is by statute made liable for the payments of the debts of the deceased, it constitutes legal assets, (1 Sto. Eq., § 552, Ed. 1873,) and it has been said that the true test as to whether the assets are legal or equitable is not whether the executor or administrator, but whether the claimant, can reach them without resorting to a court of equity. (2 Will. Exrsn., 1520.) In this State any creditor may, in default of other assets, proceed to subject real estate to the payment of his demand, and the court exercising probate jurisdiction may, of its own motion in a proper case, order it to be done. Wherever the doctrine of marshalling assets in administration obtains, courts of equity follow the same rules in regard to legal assets which are adopted by courts of law, and give the same priority to the different classes of creditors which is allowed at law. (1 Sto., Eq., § 553.) Under our statute, demands against the estate of any deceased persons are divided into six classes, and are required to be paid in the order in which they are classed, and no demand of one class shall be paid until all previous classes are satisfied. This order of

priority in classification and payment could not be disregarded even by a court of equity. If this bill can be maintained, it would be the duty of the court to ascertain whether any debts in the classes having priority over the class to which plaintiff's claim belongs remained unpaid, and if so, and the value of the estate sought to be subjected to the satisfaction of plaintiff's claim did not exceed the amount of such unpaid debts having priority over his, to give judgment for the defendants. If there remained no debts in the prior classes unpaid, but debts in the same class, the amount of such unpaid debt should be ascertained and the proceeds of the lands in the hands of the heirs be divided ratably between them. The whole settlement of the estate in question might thus be transferred from the tribunal specially established by the statute for the administration of estates to a court of equity, and that, too, after a final settlement, having the validity of any other judgment from which there has been no appeal, and which remains unassailed on account of any fraud. Statutory provisions have existed in some of the States having administration laws similar to ours providing that the heirs might be sued and held liable for the debts of the deceased to the extent of the estate, interest and right in the real estate descended to them from the decedent, but only after the personal assets had been exhausted, and when after due proceedings before the proper Surrogate Court, and at law the creditor had been unable to collect his debt or some part thereof from the personal representatives of the deceased, or from his next of kin or legatee; and these facts were required to be affirmatively shown by the creditor in his bill. The case of Van Weazel vs. Wycoff, (3 Sandf. Ch. 528,) arose under such a statute; also, the case of Butts and Havens vs. Gennrig, (5 Paige, 254). The case of Thompson vs. Brown, (4 Johns. Ch., 619,) cited by plaintiff in error, was a bill against the administrator for discovery and distribution of assets.

We are of opinion that the precise and simple yet effective provisions of our administration law, whereby the

whole estate of a decedent, both real and personal, may be subjected to the payment of his debts, were designed to entirely supersede the more cumbrous machinery of the common law, and that the whole doctrine of equitable assets, marshalling assets in equity for the payment of debts, and bills for discovery of assets and account, is without application here, save in so far as the principles underlying those proceedings may be invoked in illustration or explanation of analagous remedies afforded by our statute.

That an estate by descent renders the heir liable for the debts of his ancestor to the value of the property descended, and that he holds the lands subject to the payment of the ancestor's debts, is a proposition approvingly stated by this court in the case of Metcalf vs. Smith's heirs, (40 Mo., 576); but this statement was made in contradistinction to the common law rule by which land descended or devised was not liable to simple contract debts of the ancestor or testator, nor by a specialty unless the heir was expressly named. In that case it appears that one Smith died in 1843, seized of certain land; that in 1852, and before the final settlement which took place in 1857, a proceeding in partition was instituted by the heirs of Smith, under which, said land was sold and a portion thereof purchased by the plaintiffs, Metcalf and Snyder. In September, 1853, suit was instituted against the administrator of Smith for a breach (occurring in 1848) of the covenants in a deed executed by Smith in 1843. The plaintiff in that suit obtained judgment, and on the petition of the administrator the land previously sold by the heirs in partition was sold to satisfy this judgment. At the execution sale, Mrs. Tyler, the owner of the judgment, bought the land, and Metcalf and Snyder paid her the amount of the judgment, and received from her quit-claim deeds for the premises. They then instituted suit against the heirs of Smith for the amount paid by them to protect and perfect their title. The money received by the heirs from the partition sale should have gone to pay the debts of the estate, but as the funds arising from the partition sale were

not, on the application of the administrator, paid into court for the benefit of the creditors, as in the case of Langham vs. Darby, (13 Mo., 553,) and the plaintiffs in effect paid·it for them, they were permitted to recover from the heirs as for money paid at their instance and request. That opinion was not intended to sanction any such proceeding as this. Metcalf and Snyder were not in any sense creditors of the estate of Smith, but had simply paid money to the use and benefit of the heirs, and a recovery from them was supported on that ground. The creditors of the estate obtained satisfaction of their judgment through a sale of the lands of the intestate by the administrator, in pursuance of the statute. Now, by statute, the proceeds of a partition sale of lands descended, made pending administration, cannot be paid to the heir until final settlement, unless it appear that there are other assets sufficient to pay the debts of the estate. (2 Wagn. Stat., 973–4, § 51.) Ample time and means are given under our law for the creditor to subject the real estate of the decedent to the payment of his debt. In the petition under consideration it is stated that the demand of the plaintiff was allowed and ordered to be paid. If so, there must have been assets in the hands of the administrator. An execution should have been issued against him under the statute, and if it proved unfruitful, the plaintiff might have sued out a *scire facias* against his sureties, and if all these means failed, he could still obtain an order to sell the real estate ; or if the administration was without notice and fraudulently brought to final settlement, the plaintiff might have set aside such settlement by the proper proceeding, re-opened the administration and sold the land. No dates appear in the petition showing when the transactions complained of occurred. The Circuit Court committed no error in sustaining the demurrer and dismissing the bill, and its judgment is affirmed.

Judges Wagner and Napton concur, Judge·Vories absent, Judge Sherwood not sitting