Jacobs v. Jacobs.

JACOBS *et al.*, *Appellants*, v. JACOBS.

1. **Administrator**: POWER TO COMPROMISE DEBTS. An administrator can compromise a debt due the estate where, in so doing, he exercises the care and skill of a prudent man, in the direction and management of his own affairs, and this was true before the enactment of Revised Statutes, 1879, section 242, authorizing the administrator, with the sanction of the probate court, to compromise debts due the estate.

2. ———: SETTLEMENT : CREDIT FOR PAYMENT OF CLAIMS. The probate court under Revised Statutes, 1879, section 230, may give the administrator credit for claims paid by him, where such proof is produced to the court as would have enabled the claimant to recover on his demand in a court of law.

3. ———: ATTORNEY'S FEES. The probate court can allow payment of attorney's fees incurred by an administrator in defending his final settlement. (R. S. 1879, sec. 229.)

4. ———: COMMISSION FOR SALE OF REAL ESTATE. An administrator cannot charge the five per cent. commission allowed by statute (R. S. 1879, sec. 229) on sales of real estate, and also be allowed credit for commissions paid an attorney or agent for making said sales.

5. ———: ———. There can be but one compensation for such sales, which is the commission fixed by the statute.

*Appeal from Boone Circuit Court.*—HON. G. H. BURCKHARTT, Judge.

REVERSED AND REMANDED.

*Ewing & Hough* for appellants.

(1) The court below erred in overruling objection number 2. The inventory shows a note due the estate for twenty thousand dollars, and considerable interest. Eleven thousand dollars thereof is charged to the executrix. The balance must be so charged, or satisfactorily accounted for, with interest. This is self-evident, and needs neither authorities nor argument. 73 Mo. 580; 10 Mo. App. 232. (2) The court erred in overruling objection number 17, because a number of these claims accrued during the lifetime of the decedent, and have not been allowed by any court, as required by law. Because other items were for taxes paid for which the estate was never liable. R. S., sec. 230; 73 Mo. 580; 62 Mo. 450 and 460; 61 Mo. 540. (3) The court below erred in overruling objection number 18 to defendant's second annual settlement, because the items embraced in the objection were not allowed by any court, Because vouchers 16, 17 and 19 were for taxes for which the estate was not liable. Because voucher 23 was for double commissions, charged by Guitar, and also charged by the executrix. (4) The court below erred in passing the final settlement. Because, if the final settlement is based on the annual settlements, and if they are wrong, the final settlement cannot be correct, and objection number 19 should have been sustained. 62 Mo. 417.

*Thos. Thoroughman* and *J. K. Hansbrough* for respondent.

(1) The court did not err in overruling the exception as to the Caulfield note. Schouler on Executors, secs. 386, 315; *Merritt v. Merritt*, 62 Mo. 150. Mrs. Caulfield's real estate in the deed of trust was released

by the extension of time given on the note by the testator. *Rucker v. Robinson*, 38 Mo. 154; *Wilcox v. Todd*, 64 Mo. 388. (2) The item of $1,302.86 in exception 17 was properly allowed. (3) The commissions of Guitar, Carpenter and Edwin Jacobs as brokerage for their services in selling real estate were properly allowed as part of the expense of administration. *Gamble v. Gibson*, 39 Mo. 585; *Dey v. Coleman*, 30 N. J. Eq. 259; *Tucker v. Tucker*, 59 N. J. Eq. 286; *Henderson v. Simmons*, 33 Ala. 291; Schouler's Executors, sec. 342; 2 Perry on Trusts, sec. 912; 3 Williams on Executors, p. 1860.

BRACE, J.—At the November term, 1883, of the probate court of Boone county, the respondent, executrix of George R. Jacobs, deceased, filed in said court her account for final settlement, to which the appellants took exceptions, and thereafter filed nineteen objections to the approval of such final settlement, all of which were either abandoned on trial, or overruled by the court, except 18 and 19, which were partially sustained, and both parties appealed to the circuit court. The case coming on for trial in the circuit court, the plaintiffs stated "that they abandoned all their exceptions except those numbered 2, the item of $1,302.86, mentioned in exception 17, and the items in exceptions 18 and 19, relating to commissioners for the sale of real estate, and taxes paid by defendant on the John F. Jacobs real estate, and penalties on delinquent taxes; and all attorneys' fees in final settlement, and the Caulfield note, mentioned in exception 2;" and, in connection with this statement, read exceptions 2, 17, 18 and 19, theretofore filed in the probate court.

The circuit court overruled plaintiffs' exception number 2, their objections to the credit item of $1,302.86 in the executrix's first annual settlement, objected to in exception 17; sustained exceptions 18 and 19, as to the items of credit for taxes paid by the executrix on the

John F. Jacobs land, and for penalties on delinquent taxes; overruled them as to the items of credit for commissions paid agents for the sale of real estate and for attorney's fees on final settlement, and in the matter of the Caulfield note. Stated an account between the executrix and the estate, upon the basis of the balance of $168.33 due the estate, as shown by her settlement, filed in the probate court, by adding to such balance the amount of the credits taken for penalties on tax bills and interest, amounting to the sum of $30.93, the credits taken for taxes paid on the John F. Jacobs land and interest, amounting to $463.10, making the aggregate debits $662.36; allowing the executrix a credit of twenty-five dollars for attorney's fee in defending the settlement in the probate court, and three hundred dollars in the circuit court, showing a balance due the estate of $337.36 at the date of the judgment in the circuit court; rendered judgment therefor and ordered same certified to the probate court for distribution under the will; and that the costs of the appeal from the probate court and all other costs, under objections not sustained, be paid by the objectors, who now appeal from that judgment.

I.   Plaintiff's exception number 2 to the executrix's account for final settlement is as follows:   "2. Defendant has failed to account for a balance of the inventoried note of G. B. Caulfield and Fanny Deaver, with interest thereon,—the said balance being, as shown by inventory and the collection reported on said note in defendant's first settlement, twelve thousand, four hundred and fifty seven dollars, which sum should be charged to defendant, with interest thereon, at ten per cent., compound, from April 16, 1878."

The note of *B. G.* Caulfield and Fanny Deaver, referred to in this exception was dated August 1, 1867, for twenty thousand dollars, payable to the testator, George R. Jacobs, three years after date, with interest

from maturity at the rate of eight per cent. per annum. To secure this note and six interest notes for eight hundred dollars each, payable in six, twelve, eighteen, twenty-four, thirty and thirty-six months, of same date, a deed of trust of the same date was executed by B. G. Caulfield, his wife Laura Caulfield and Fanny Deaver, upon certain real estate in the city of St. Louis, belonging to Mrs. Deaver and Mrs. Caulfield. The interest notes were paid as they became due, and, shortly after the principal note became due, the time of its payment was extended by an agreement endorsed on the note, signed by Mrs. Deaver, B. G. Caulfield and the testator, Dr. Jacobs, in consideration of the payment of ten, instead of eight, per cent., as specified in the note. Interest at ten per cent. was thereafter paid on the note to August 1, 1876, and, on the fifth of April, 1877, it was inventoried and came into the hands of the executors at $21,361.10, the amount of the principal and interest at ten per cent., from August 1, 1876, to April 5, 1877, the date of the inventory. The plaintiff introduced evidence tending to show that the real estate owned by Mrs. Deaver, in the years 1877 and 1878, was worth an amount largely in excess of the amount of said note. The executrix introduced evidence tending to show that Mrs. Deaver, during those years, although the owner of valuable real estate, was in embarrassed circumstances, that she was largely in debt, and that her real estate was heavily encumbered; to use her own language, that in 1878 "her financial condition was very bad." "If the Jacobs' debt had been forced upon me, it could not possibly have been made." The action of the executrix, in regard to this note, as well as the considerations which induced such an action, will appear from the following extracts from the evidence of R. B. Price, who, at the inception of the administration, was the co-executor of Gen. Guitar, who was the attorney for the estate; and of Francis F. Haydel, of the firm of

John Byrne, Jr., & Co., real-estate agents, who nego-
tiated this loan, and who, for many years, had been the
agents of Dr. Jacobs, the testator, in the management
of his interests in St. Louis, and who continued in the
same relation to his executors.

Mr. Price testified : " We employed Gen. Odon
G. Guitar to act as counsel for us in the administration
of the estate, and he and I both made a careful exami-
nation as to the nature, character and value of the real
estate included in the deed of trust, and the solvency
of the makers of this note. I thought it best, and Gen.
Guitar, as our attorney, advised us to compromise and
settle this debt, by releasing Mrs. Fanny Deaver and
her property from all liability on the note, upon her
paying to us eleven thousand dollars, being the one-half
then due on the note, and taking a new note, executed
by Mrs. Laura Caulfield and B. G. Caulfield, for the
balance, with a new deed of trust on the same property,
belonging to Mrs. Caulfield, embraced in the first deed
of trust; this we did, and the property was afterward
sold under the new deed of trust, and the proceeds
accounted for. We had John Byrne, Jr., & Co., one of
the best real-estate firms in St. Louis, to assist us in
making the compromise and settlement with Mrs.
Deaver; I was in St. Louis three or four days looking
into this matter."

Cross-examination : " I did not make any personal
examination of this matter myself, but had confidence
in John Byrne, Jr., & Co., and the man they employed
to examine the title and condition of Mrs. Deaver's real
estate; I consulted with and acted under the advice of
John Byrne, Jr., & Co., and Gen. Guitar."

Mr. Haydel testified : " At the time the compromise
was effected by which Mrs. Deaver was released from
her indebtedness to Dr. Jacobs, I was acquainted with
her financial condition, having examined into her
affairs with a view to this settlement, and from this

examination I know the settlement was the best that could have been made, and considered it advantageous to the estate; our firm was at that time and now is engaged in the real-estate and loan business; if a sale of the property mortgaged had been had at that time, less money would have been realized than was realized by the settlement; I did not think as much money could in any other way be made out of Mrs. Deaver as by this settlement."

Gen. Guitar testified : " I was employed in 1877 by Mr. Price and Mrs. Jacobs as their counsel and attorney in winding up and administering the Jacobs estate; I have been acting as their counsel ever since; I was requested by them to investigate the solvency of the parties, and the nature and character of the real estate, covered by the deed of trust given by Fanny Deaver and Laura Caulfield, to secure the note in controversy; and after making a full investigation of all the facts, and after fully informing myself as to the solvency of the parties, and the kind and value of the real estate embraced in the deed of trust, I advised my clients, Mr. Price and Mrs. Jacobs, to compromise with Mrs. Deaver by her paying one-half of the note, and their releasing her from all further liability on the note, and by the other half due on the note being secured by a new note, executed by Mrs. Laura Caulfield and her husband, B. G. Caulfield, secured by a deed of trust on the same real estate belonging to Mrs. Caulfield, embraced in the first deed of trust; they acting under my advice, settled the note in full on this basis, and the Caulfield property was afterward sold under the deed of trust, and the proceeds accounted for. * * * By reason of the endorsement on the note, made after it became due, extending the time of payment, I advised my clients that Mrs. Caulfield's property in the deed of trust was released; and that was one of the reasons for my advising, and my clients accepting, the compromise settlement; the

endorsement on the note was signed by Mrs. Fanny Deaver, B. G. Caulfield and Dr. Jacobs, after the note became due; and in consideration of a definite extension of time being given by Dr. Jacobs, Mrs. Deaver and B. G. Caulfield agreed to pay ten per cent. interest instead of eight per cent. which the note originally bore."

It is not pretended that the executrix has not accounted for every dollar that has been realized upon this asset, but it is urged that she could and ought to have realized the whole amount of the principal and the interest of said note, which confessedly she did not. There is some contention as to the amount which she fell short, but in the view we take of the evidence it is not necessary to determine definitely that amount.

At the time the compromise of this debt was made there was no statutory enactment, as now, authorizing an executor or administrator with the approbation of the judge of probate to compound with a debtor to the estate who was unable to pay all his debts, and give him a discharge on receiving a fair proportion of the same. R. S. 1879, sec. 242. "At common law the arbitration, compromise or release of a debt or claim due the estate, was regarded as a waste on the part of the personal representative, if it resulted in loss to the estate, * * * as to compromise, however, later qualifications were admitted, which in good reason apply to either act, which the court of chancery saw fit to insist upon, and which, as to either compromise or arbitration, are now usually insisted upon. The executor or administrator who compromised a debt so as to receive less than its full amount was still held answerable for the whole, yet if he could show in exculpation that he acted therein for the benefit of the estate he stood excused. The universal test for modern times should be whether, in compromising or submitting to arbitration, the representative acted with fidelity and due prudence." Schouler on Executors & Administrators, sec. 386.

In *Merritt v. Merritt*, 62 Mo. 150, it was said: "The prevailing rule now established in this court is, that executors and administrators stand in the position of trustees to those interested in the estates upon which they administer, and are liable only for want of due care and skill, and that the measure of care and skill required of them, is that which prudent men exercise in the direction and management of their own affairs." Applying this rule to the compromise made by the executors in this case, and on principle it cannot be seen why it should not be applied, it abundantly appears from the evidence, that the executors, in making this compromise, acted diligently, in good faith, with all the prudence, care and skill that a prudent man with the light then obtainable in regard to the value of the security, the situation of the debtors' affairs, and the relation they sustained to the obligation which the estate held against them, could have exercised, in a manner which then seemed to be for the best interest of the estate. And even if it could have been shown, which, however, was not done, that the executors were mistaken and that they might have made the whole of the debt compromised, yet under such circumstances they ought not to be held liable for more than the amount which they actually realized. The probate and circuit court both held that the executrix was not liable on account of this asset for more than she had accounted for in her settlements, which was the full amount secured by the compromise, and in doing so, we think, committed no error.

II. The objection to the item of $1,302.86, in exception 17, was properly overruled, as it appears from the record that although the voucher for that credit was not allowed as a demand against the estate, yet at the time credit therefor was taken by the executrix in her settlement, such proof thereof was produced to the probate court as would have enabled the claimant to

recover in a suit at law, thus bringing this credit within the terms of Revised Statutes, 1879, section 230 ; besides the evidence on the trial in the circuit court showed that it was a legal demand against the estate, and the executors had paid it.

III.   The attorney's fees paid by the executrix, and allowed by the probate court for legal services, rendered in the settlement of the Caulfield note, are not unreasonable, and was a proper charge against the estate. Nor do we find any error in the allowance made by the circuit court to the executrix for attorney's fees in defending her final settlement in the probate and circuit court.   Such allowance is for legal advice and service, such as is contemplated in the statute.   R. S. 1879, sec. 229.   If executors and administrators of estates who have faithfully discharged their duties, and, in the main, rendered a true account of their trust, are to be required at their own individual cost to defend their settlements, in protracted and expensive litigation, from every attack that may be made upon them, few responsible and competent persons will be found to take charge of estates for the modest compensation the law allows for the service.   2 Woerner Am. Law of Adm., sec. 515 ; *Pinckard v. Pinckard*, 24 Ala. 250 ; *Smyley v. Reese*, 53 Ala. 100 ; *Sterrett's Appeal*, 2 Penn. 419; Schouler's Executors and Administrators, sec. 544.

IV.   The items in exceptions 18 and 19, relating to commissions for the sale of real estate, are as follows, in second settlement :

O. Guitar, Com. on Sales of Real Estate . . . . . . . $349 20
In Final Settlement amount paid J. M. Carpen-
    ter, Com. on Sales of Real Estate . . . . . . . . . .   350 00
And for Am't paid Ed. Jacobs, Com. on Sales
    of Real Estate . . . . . . . . . . . . . . . . . . . . . . . . . .   100 00

The probate court disallowed these credits, but they were allowed by the circuit court and plaintiff's objections thereto overruled.   Revised Statutes, 1879, section

229, provides that executors and administrators shall be allowed "all reasonable charges for funeral expenses, leasing real estate, legal advice and service, and collecting and preserving the estate; *and, as full compensation for their services and trouble, a commission of five per cent.* on personal property, and on money arising from the sale of real estate." The testator in his will directed that all his real estate not specially devised be sold by his executors. The executrix, in her settlements, took credit for five per cent. commissions on all the money arising from sales of real estate, and in addition took credit for these commissions paid her agents for effecting such sales. The statute is the measure of the executrix's compensation for the discharge of her duties and whether the duty be discharged by her or her agents, there can be but one compensation allowed for its performance, and that, at the rate fixed by the statute. These credits ought to have been disallowed by the circuit court, and for its error in not doing so, the judgment will be reversed, and the cause remanded to the circuit court, where judgment will be entered charging the executrix in addition to the balance found to be due the estate by said court with these items, and interest thereon from the date when credit for them was taken. All concur, except RAY, C. J., and BARCLAY, J. absent.