MATSON & MAY, Respondents, v. PEARSON, Administrator, Appellant.

St. Louis Court of Appeals, December 11, 1906.

1. EXECUTORS AND ADMINISTRATORS: Equity Jurisdiction: Adequate Remedy at Law. The reason for the old English rule that courts of chancery possess jurisdiction of all matters respecting administration and estates of deceased persons, does not obtain in this State because the statutory provisions are so ample with respect to such matters that they amount to an exclusion of equity jurisdiction; a court of chancery will not assume jurisdiction of a matter involving a demand against an estate of a deceased person unless the facts are such that adequate relief at law cannot be had.

2. ———: Demands: Services Rendered Estate. The former rule that a demand against an estate could only arise by virtue of a contract or undertaking of the deceased made in his lifetime, has exceptions in this State. An administrator or executor in this State may incur obligations against the estate in his hands, which are enforcible as demands; of such are reasonable attorney's fees for services rendered the estate and commissions earned by a real estate agent employed by an executor to sell real estate, where such executor had power under the will to sell such real estate.

3. ———: ———: ———: Equity Jurisdiction. Attorney's fees incurred for services rendered the estate in the hands of an executor, and compensation to real estate agents employed by an executor to dispose of real estate which such executor had power under the will to sell, are legitimate expenses incurred in the administration and entitled to priority; while they could be presented as demands against the estates and allowed as claims of the fifth class, being entitled to priority the remedy

at law is not adequate and a court of equity will entertain juris-
diction of such claims in order that complete justice may be
done.

4. ————: Commission for Sale of Real Estate: Real Estate Agent.
Under section 223, Revised Statutes of 1899, administrators and
executors are allowed a commission of five per cent "arising
from the sale of real estate;" under this section an executor
could not pay, and real estate agents employed by him could
not charge, a commission for procuring a purchaser for real
estate which the executor had power to sell, where no sale was
consummated, because there was no money "arising from the
sale of real estate" within the meaning of the section.

Appeal from Louisiana Court of Common Pleas.—*Hon.
David H. Eby,* Judge.

AFFIRMED IN PART AND REVERSED IN PART.

*Pearson & Pearson* for appellant.

(1) An estate can only be bound by a contract of
the executor for necessary services, actually performed
by an attorney, for, and beneficial to, the estate. Grove
v. Reynolds, 100 Mo. App. 59; Nichols v. Reybourn, 55
Mo. App. 5; State ex rel. v. Walsh, 67 Mo. App. 353.
(2) There can be but one compensation for the sale of
real estate, which is the commission fixed by the statute.
Jacobs v. Jacobs, 99 Mo. 436, 437; Stephens v. Cassity,
104 Mo. App. 212; In re Garrison v. Trust Co. 77 Mo. App.
336; R. S. 1899, sec. 222. (3) An action against an
estate of a decedent to assert a claim for legal services,
and for commissions for the sale of real estate, as in this
case, is an action at law; and, unless waived by the
parties should be tried by a jury. McDonald v. Titt-
man, 96 Mo. App. 542; Kingsbury v. Joseph, 94 Mo.
App. 304; Stevens v. Cassidy, 104 Mo. App. 212; Dilly
v. Railroad, 55 Mo. App. 128.

*Matson & May pro se.*

(1) An attorney, who renders legal services for the
benefit of an estate at the instance of administrator is

entitled to have his claim for reasonable compensation therefor allowed, and paid directly out of the assets of the State. Nichols v. Reyburn, 55 Mo. App. 1; State ex rel. v. Walsh, 67 Mo. App. 348. (2) Where services are rendered by an attorney, the measure of recovery therefor is the reasonable value thereof, in the absence of a contract, what such services were worth to the estate is not the criterion of value. "The laborer is worthy of his hire." Kingsbury v. Joseph, 94 Mo. App. 298; In re O'Neill, 59 N. Y. Supp. 1020. (3) An executor has authority to incur reasonable and proper expense in the management and disposition of the estate in accordance with the terms of the will, and to employ an agent to find a purchaser for the land, and to pay him an agreed commission therefor. Dyer v. Winston (Texas), 77 S. W. 227; sec. 2247, ch. 30, Statutes of Texas (1897) ; R. S. 1899, sec. 223; Ansley v. Richardson, 95 Mo. App. 336; Gamble v. Gibson, 59 Mo. 593; Renwick v. Bancraft, 56 Iowa 528; Wells v. Disbrow, 48 N. Y. S. R. 746; Woerner's American Law of Adm. (2 Ed.), sec. 514; 2 Beach, Trusts and Trustees, sec. 460; 7 Am. and Eng. Ency. of Law, p. 434 and notes. (4) If plaintiff's efforts to make a sale procured a purchaser then defendant is liable to them for their commissions notwithstanding they did not in fact make the sale; such is the ruling in this State. M'cCrory v. Kellogg (Mo.), 81 S. W. 466; Blaydes v. Adams, 35 Mo. App. 526; Bell v. Kaiser, 50 Mo. 150; Perrin v. Kimberlin, 85 S. W. 630.

Defendant cannot relieve himself of liability by refusal to consummate the sale, or by a voluntary act of his own (such as resigning) disabling him from performance. Baily v. Chapman, 41 Mo. 536; Jones v. Perry, 37 Mo. App. 125.

STATEMENT.—The plaintiffs are attorneys at law and practicing their profession under the firm name of Matson & May, at Louisiana, Missouri. They are also engaged in the real estate business under the same firm

name. The defendant is administrator *de bonis non* with the will annexed of James Lonergan, deceased. The suit is by bill in equity, whereby the plaintiffs seek to recover against the defendant administrator *de bonis non*, on account of services alleged to have been rendered by the plaintiffs in their capacity as attorneys at law and real estate agents at the instance and request of Col. Patrick F. Lonergan, who was the original executor of James Lonergan's estate and the immediate predecessor of the present defendant, administrator *de bonis non.* It is alleged that the services, the reasonable value of which are sued for in the bill, were rendered by the plaintiffs for the benefit of the estate and the funds thereof and the bill prays that the court make an order upon the defendant, administrator *de bonis non,* directing him to pay the same out of the funds of said estate in his hands.

The material facts are, about October, 1903, James Lonergan, Esq., a resident of Pike county, Missouri, departed this life testate. At the time of his decease, he was possessed of an estate valued at about $5,000, consisting principally of lands situated in said county. By his last will and testament, he nominated and appointed his brother, Col. Patrick F. Lonergan, executor thereof without bond, etc. The will, having been duly probated, letters testamentary thereon were duly issued to said executor and he qualified as such October 26, 1903; inventoried the estate within a few days thereafter and proceeded to execute the will. Col. Patrick F. Lonergan, the executor, was quite old and in failing health, and therefore he found it necessary to make a trip to California, which he did in January, 1904, succeeding his qualification as executor in October, 1903; and desiring to be relieved of the responsibilities of the estate for these reasons, placed his resignation as executor thereof in the hands of his attorneys, the plaintiffs, to be presented to the probate court of Pike county at its

February term, 1904. This was not done by them, however, inasmuch as a controversy arose which made it seem proper to the plaintiffs to withhold the same temporarily and a letter having been received from Col. Lonergan directing them to withhold the resignation, the same was never filed. In the month of April, however, the present defendant, Dr. Donnell Pearson, having purchased from the heirs their title to the estate, subject to its indebtedness, obtained from Col. Lonergan and presented to the probate court, his resignation, whereupon Dr. Pearson was appointed administrator *de bonis non* with the will annexed. Col. Lonergan's health did not improve. He intended to return to his home in Louisiana about May 25th but died in California a short time after his resignation and prior to the date set for his homecoming. During his absence in that State and prior to his resignation, plaintiffs counselled and advised him by letter, etc., as executor, and performed certain legal services at his instance. They were also employed as real estate brokers by him as executor to find a purchaser for the lands of the deceased, which he was authorized by the will to sell and they found a purchaser therefor in due time at a price in excess of that at which the lands were being held, which purchaser and price were acceptable to Col. Lonergan. He declined to consummate the sale to this purchaser, however, for the reason hereafter given. The will of James Lonergan, deceased, conferred upon Col. Lonergan, as executor, the authority to sell the lands in broad terms as follows: "My said executor shall sell to the best advantage all personal property, real estate, and mixed property of my estate at either private or public sale as he may think best, and as soon after my death as he may do so to advantage and on such terms as my said executor shall think best." At the time of the resignation of Col. Lonergan as executor, he had neither sold the lands nor had he paid out or distributed the

$200 or $300 in his hands arising out of the sale of personal property and presumably therefore made no claim for commissions as executor allowed by the statute. At any rate, he made no claim for commissions and none were allowed him by the probate court.

As said before, plaintiffs sued the administrator *de bonis non* in equity. Their bill is in two counts, reciting the history of the matter in substance as above set forth, etc., in each count. The first count avers that Col. Lonergan, upon qualifying as executor, employed them as attorneys and counsellors at law to advise and counsel him with respect to the legal phases of the management of the estate, etc., and sets out a bill of items for services alleged to have been rendered by them to the estate in accordance with such employment, the sum total of which amounts to $250. It avers that all of such services were rendered for the benefit of the estate and the funds thereof and the parties interested therein; that they have not been compensated therefor; that the same is due and unpaid, etc., and concludes as follows: "The plaintiffs therefore pray that the said sum of two hundred and fifty dollars ($250) may be ordered by the court to be paid to them by defendant out of the funds in his hands belonging to the estate of said James Lonergan, deceased, together with interest and costs." The second count, after alleging all proper matters of inducement, etc., and that the present defendant, administrator *de bonis non* succeeded Col. Lonergan in charge of the estate, avers that under the will of James Lonergan, deceased, his executor, Col. P. F. Lonergan was duly authorized and empowered to sell to the best advantage all real estate belonging to the estate of said James Lonergan, deceased, at either public or private sale as such executor might think best, as soon after the death of said James Lonergan as said executor might do so to advantage and upon such terms as such executor might think best, etc., that in pursuance to this power

and by way of effectuating the same, Col. Lonergan employed the plaintiffs in their capacity of real estate agents to find a purchaser for such lands and to accept bids thereon, etc.; that the lands mentioned consisted of one hundred and forty-five acres in Pike county, Missouri; that plaintiffs, in compliance with such employment as real estate agents, devoted time and labor in that behalf and procured a purchaser, one G. J. Oliver, for such lands, who was ready, able and willing to purchase the same at the price of $4,700; that such price was far in excess of the price at which either the executor or the legatees under the will asked or anticipated such lands could be sold for; that plaintiffs communicated the offer and the name of the purchaser in due time to Col Lonergan, the executor, and fully performed the conditions of their employment, etc.; that the executor declined to execute the deed and consummate the sale, wherefore they allege that the estate of which Col. Lonergan was executor, became indebted to them in the sum of $235, the reasonable and customary commissions of real estate agents in that community; that such services were performed for the benefit of the estate, its funds and the parties interested therein; that the same was a reasonable and proper expense of the management and disposition of the real estate in accordance with the terms of the will. The count concludes as follows: "Wherefore plaintiffs pray that the said sum of two hundred and thirty-five dollars ($235) may be ordered by the court to be paid by the defendant out of the funds in his hands belonging to the estate of said James Lonergan, deceased, together with interest and costs."

The answer admits the defendant to be the administrator *de bonis non* as alleged; that he has qualified and is acting as such, and denies each and every other allegation in the bill.

The evidence introduced on the part of the plain-

tiffs tended to prove the allegations of the bill as contained in both counts thereof. The court found against the plaintiffs on all of the items of the account stated in the first count, except the last, and on this item found for them. By so doing, it found that the plaintiffs were employed by Col. Lonergan to counsel and advise him and look after the legal phases of the estate while he was absent in California from January 14th to April 22d, the date of his resignation; that they rendered services to the estate under such employment as attorneys by writing letters and otherwise; that such services were beneficial to the estate; that their reasonable value was $50, for which amount judgment was given on the first count.

The evidence under the second count tended to prove that the executor, Col. Lonergan, authorized the plaintiffs as real estate agents to procure a purchaser for the lands, etc.; that they exerted themselves in that behalf and procured a purchaser who was ready and willing and amply able to purchase the same at $4,700; that this was more than either the executor or the heirs were asking for the lands; that this bid and the name of the proposed purchaser, G. J. Oliver, were communicated to Col. Lonergan forthwith, which appeared to be entirely satisfactory to him, but was declined in a letter from him to plaintiffs of date April 26th, in which he said in substance that Dr. Pearson (the present defendant, administrator *de bonis non*) had bought it from the heirs; that the heirs had so notified him; that therefore he thought it best to turn the whole matter over to him, etc., which he had done and had forwarded his resignation to Dr. Pearson and requested him to present it to the court, etc.; that he had already written some of the heirs and a man who desired to rent the place to the same effect. He concluded his letter by saying: "Of course, I could still make the deed to Mr. ——— you speak of and it would be good. I have given my word

to Dr. Pearson and cannot withdraw it. I can't take any interest in the matter now as my relatives are out of it. . . . Thanking you for the offer, I am gents, etc., etc., P. F. Lonergan." It was shown and not controverted that the customary commission for real estate sales of this nature at and around Louisiana, is five per cent of the purchase price. It was further shown that Dr. Pearson, administrator *de bonis non,* purchased the interests of the heirs in the lands and took deeds from them at $4,600 almost simultaneously with the plaintiffs finding a purchaser at $4,700 and before their authority to do so was revoked. The fact is, their authority was never revoked except by the letter of Col. Lonergan in which he declined to convey the lands.

The court found the issues on the second count for the plaintiffs and assessed their recovery at $235, the same being the full amount sued for therein, or five per cent of $4700, the price which Mr. Oliver was willing to pay for the lands.

Upon the theory that the action was at law, the defendant demanded a jury at the inception of the trial and the court refused the demand, to which action an exception was properly saved. Proper preliminary motions having been filed and overruled, defendant appeals.

NORTONI, J. (after stating the facts)—1. The court refused the defendant's request for a jury. The defendant maintains that this is an action at law and therefore he was entitled to the verdict of a jury on the issues. Contra to this, the plaintiffs maintain that the suit is in equity and therefore the court properly refused the request for a jury. From the allegations and prayer of the bill, it is obvious that the pleader intended to and does seek equitable relief, hence the question arises whether or not a court of equity has jurisdiction to entertain the bill on the facts stated. It is determined and abundantly supported by both principle and authori-

ty that a court of equity will not assume jurisdiction
of a claim against an estate of a deceased person until
it has been made to appear that the probate court can-
not afford the requisite relief. [2 Woerner's Law of
Administration, 815-816; 1 Woerner's Law of Adminis-
tration, 356; Adams v. Adams, 22 Vt. 57; Harris v. Dou-
glas, 64 Ill. 466-469; Blanchard v. Williamson, 70 Ill.
647-651; Miller v. Woodward, Admr., 8 Mo. 169; Pearce
v. Calhoun, 59 Mo. 271; Titterington v. Hooker, 58 Mo.
593; In re Estate of Meeker, 45 Mo. App. 186; Meeker v.
Straat, 38 Mo. App. 239; Overton v. McFarland, 15 Mo.
312.] The principle thus announced pervades the entire
system of equity jurisprudence and is to the effect that
equity interposes only to supply the deficiences of the
law and therefore if it appears that a party has an ade-
quate remedy at law, equity will point him to that court
for relief and decline to assume jurisdiction. It is sug-
gested, however, that even though the claims presented
in the bill be demands against the estate within the
meaning of the administration law, and as such, cog-
nizable in law courts, this equitable proceeding may be
sustained upon the principle that inasmuch as under the
English rule, courts of chancery assumed jurisdiction in
nearly or about all manner of instances with respect to
estates of deceased persons and the administration there-
of, and that the doctrine is firmly established to the ef-
fect that whenever chancery once had and entertained
jurisdiction, such jurisdiction continues and the subse-
quent grant of remedy at law will not oust the court of
ejuity of its jurisdiction in the premises unless the equi-
table remedy is extinguished by direct and positive pro-
hibitory provisions in the statute conferring such reme-
dy at law. There is no doubt but such is the rule which
obtains with us and elsewhere. [Woodward v. Wood-
ward, 148 Mo. 241, 49 S. W. 1001; Stewart v. Caldwell, 54
Mo. 536; 1 Story, Eq. Juris. (13 Ed.), sec. 64-I and 80.]

121 App—9

Now, it appears that in England, the subject of the settlement and disposition of estates of deceased persons, is or was, a matter over which the ecclesiastical and chancery courts, to a very large extent, exercised what seemed to be a concurrent jurisdiction, and it is pointed out in the history of that jurisprudence that the courts of chancery so lightly esteemed the proceedings of the ecclesiastical courts with respect to matters of administration that they did not hesitate to take the subject from them, etc., but upon examination of the authorities, the reason for the exercise of this jurisdiction by the courts of chancery is discovered to be that the chancery courts asserted the prerogative on account of the inadequacy of the powers and infirmities of the ecclesiastical courts to meet the exigencies presented and to render complete justice to all concerned. So we ascertain the true ground upon which the chancery courts assumed jurisdiction in these cases to be, either, that the remedy at law did not exist at all or was not "full, adequate and complete." [Miller v Woodward, 8 Mo. 161-173; Adams v. Adams, 22 Vt. 50-57; 1 Story, Eq. Juris. (13 Ed.), sec. 534.] And indeed this was but the application of the same ancient principle of equity jurisprudence heretofore adverted to. It has been pointedly decided, however, by our Supreme Court that the reason on which equity interposed in matters of administration in the old days does not obtain with us and that the principle suggested has no application in view of our statutes with respect to administration. It is pointed out that they are so full and complete, abounding with apt and pertinent provisions to administer full, complete and adequate relief at law, and that their provisions are so ample with respect to matters of administration that they amount to an exclusion in fact, of the chancery jurisdiction asserted unless there be some fact or facts involved which renders the case one where adequate relief at law cannot be had. [Miller v. Woodward,

Admr., 8 Mo. 169-174; Overton v. McFarland, 15 Mo. 312; Titterington v. Hooker, 58 Mo. 593; Pearce v. Calhoun, 69 Mo. 217; Adams v. Adams, 22 Vt. 50-57; 1 Woerner's Amer. Law of Administration, 355-356.] It appearing therefore that the jurisdiction of courts of equity no longer extends to matters of this nature except it be upon the ground of an inadequate remedy at law, it remains to ascertain whether in this case the plaintiffs have such adequate remedy; that is, such a remedy at law as will afford to them the full and complete redress to which they are entitled, and this involves an examination of the nature of the claims presented. The opinion generally prevails, and under the old law it was quite true, that those claims which are considered as demands against an estate arise only by virtue of some contract or undertaking of the deceased in his lifetime and were either demands against him at the time of his death or would have become such in due time had he lived, and such other claims as are specifically enumerated as such by the statute; for instance, funeral expenses, which are of course contracted after the demise. The principle underlying this doctrine of the old law results from the fact that all contracts, entered into by the administrator during the course of the administration, were his undertakings and not those of the estate in such a sense as would obligate him in his representative capacity so that they could be enforced at law and be satisfied out of the estate. [Presby. Church v. McIlhaney, 61 Mo. 540; Thompson v. Smith, 64 N. H. 412; see also Judge BOND's opinion in Yeakle v. Priest, 61 Mo. App. 47, and cases cited therein.] This rule, however, does not obtain in this State to the full extent of its influence at common law, but, on the contrary, the principle has become firmly imbedded in the jurisprudence of Missouri to the effect that the "administrator is a statutory trustee to the end that the property of the estate may be collected, preserved and disposed of according to law." [Smarr v.

McMaster, 35 Mo. 349; Nichols v. Reyburn, 55 Mo. App. 1-7.] And upon this principle, adjudications have followed until it is now the well settled rule of law that the administrator has the power to bind the assets of the estate in his hands whenever authority to do so is given by the statute and that within the limitations of the statute, he may incur obligations which are enforceable at law against the estate. [Nichols v. Reyburn, 55 Mo. App. 1; Yeakle v. Priest, 61 Mo. App. 47-50; Powell v. Powell, 23 Mo. App. 365; Lycan v. Miller, 56 Mo. App. 79-84.] Now, inasmuch as sec. 92, R. S. 1899, requires the administrator or executor to commence and prosecute or defend actions to which the estate is a party and · sec. 223, ibid, authorizes the probate court to allow him a reasonable charge for legal advice and services, it has been adjudged upon the reasoning indicated by both this court and the Kansas City Court of Appeals that claims for attorney's fees such as presented in the first count here, are demands against the estate within the meaning of the administration law. [Nichols v. Reyburn (St. L.), 55 Mo. App. 1; State ex rel. v. Walsh (K. C.), 67 Mo. App. 348; Lycan v. Miller, 56 Mo. App. 79-84; see also Kingsbury v. Joseph, Admr., 94 Mo. App. 298, 68 S. W. 93.] The latter case originated as a demand filed against the estate in the court of common·pleas in Cape Girardeau, which court possessed probate jurisdiction in that county. See also McDonald v. Tittman, Admr., 96 Mo. App. 526, which case originated as a demand filed in the probate court of the city of St. Louis as appears by reference to the original files here, which we have examined. [See also Nave v. Salmon, 51 Ind. 159; Long v. Rodman, 58 Ind. 58; Scott v. Dailey, 89 Ind. 477; Portis v. Cole, 11 Tex. 157.] Indeed, under the authorities, there are numerous claims arising after the decease and out of contracts of the administrator entered into within the limits of his statutory authority which are adjudged to be demands against the estate within the meaning of the ad-

ministration law and as such, enforceable at law against the estate.  [State ex rel. v. Tittmann, Admr., 103 Mo. 553-556, 15 S. W. 936; Powell v. Powell, 23 Mo. App. 365; Lycan v. Miller, 56 Mo. App. 79.]  And the will, having conferred upon the executor the broad power to sell the lands of the estate, there is no doubt but that he was thereby incidentially authorized to employ real estate agents to assist him in making a sale thereof and that the services so rendered by them under contract with the executor, if the sale was actually consummated satisfactorily to the executor and as contemplated by sec. 223, R. S. 1899, would be services beneficial to the estate in that sense which would entitle them to enforce their claim asserted in the second count against the estate as a demand arising in the nature of an expense of administration to the extent at least which the statute authorizes compensation to the executor for the same services, as indicated in Jacobs v. Jacobs, 99 Mo. 427, 12 S. W. 457.  Now, under the authorities, the subject of this suit being demands against an estate, are they demands in the sense that they may be presented and allowed against and satisfied out of the estate in the ordinary procedure provided by statute for the allowance and payment of demands so that the plaintiffs can recover the full measure of relief to which they are entitled?  If the demands be such, then the law affords adequate relief and a court of equity is without jurisdiction.  Section 223, R. S. 1899, contemplates that the executor may employ counsel at a reasonable expenditure, compensate him or them for services rendered and then present the amount paid out in that behalf to the probate court as a credit in his settlement and it becomes the duty of the court to allow a reasonable amount to the executor as a credit therefor.  It was upon a strict construction of this statute that the Kansas City Court of Appeals in Stephens v. Cassity, 104 Mo. App. 210, held that a suit at law by an attorney could not be maintained against an

administrator on account of such services, announcing the doctrine that such a claim was not a demand against the estate and that the probate courts only have authority to allow the same in settlements of administrators and executors. This case, however, is not in harmony with the prevailing adjudications on the subject. It seems to ignore the entire trend of the adjudicated law in this State with respect to matters of this sort and directly conflicts with both Nichols v. Reyburn, decided by this court, and State ex rel. v. Walsh, 67 Mo. App. 348, decided by the Kansas City Court of Appeals. It will therefore not be further noticed.

Under the circumstances of this case, Col. Lonergan, the executor, having died without making a settlement of his executorship and without asking such allowance from the probate court for plaintiffs' services, this avenue of the law is foreclosed to them. It is suggested, however, that it is now settled by the case of State ex rel. v. Walsh, 67 Mo. App. 348, in point, and by analogy, in Mac Donald v. Tittman, Admr., Powell v Powell, and Kingsbury v. Joseph, supra, that these plaintiffs, the meritorious parties, may present their demands directly to the probate court and have them allowed as demands against the estate and therefore an adequate remedy at law exists. It is true that the demands could have been so presented and upon such allowance, had the demands been presented to the probate court as of the date this suit was filed, such date being within one year from the issuance of the first letters on the estate, under sec. 184, R. S. 1899, it would have been the duty of the probate court to classify the same as demands of the fifth class and in event the estate were solvent they would no doubt be paid in due time. In such case, however, if the assets of the estate were consumed by the demands of the first, second, third and fourth classes, these plaintiffs would receive nothing for their services, by which the estate had been benefitted. It is true that the

plaintiffs might have instituted their suit at law, and reduced the same to judgment in the circuit court under the provisions of sec. 191, R. S. 1899, which section confers upon the circuit court concurrent jurisdiction with the probate court for the adjudication of demands against the estate. [Wernse v. McPike, 100 Mo. 486, 13 S. W. 809; Richardson v. Palmer, 24 Mo. App. 480-488; Nichols v. Reyburn, 55 Mo. App. 1; State ex rel. v. Tittman, 103 Mo. 553; Jamison v. Wickham, 67 Mo. App. 575-579; Miller v. Woodward, Admr., 8 Mo. 167; Chapman v. Merritt, 45 Mo. App. 179.] And upon a recovery of judgment in that court, the same could have been exhibited by the plaintiffs for allowance to the probate court, as pointed out in the statute, and the suit having been instituted at law in the circuit court, under the provisions of sec. 187, it would be considered as an exhibition of the demands against the estate as of date of the service of process upon the administrator *de bonis non,* and in this case the date of such service being within one year from the grant of the first letters on the estate, under section 208 and 187 R. S. 1899, it would be the duty of the probate court to classify such demand as pointed out by the statute. [Wernse v. McPike, 100 Mo. 476-486.] Under these circumstances, they would have become demands of the fifth class and in due time the plaintiffs would receive their compensation, provided sufficient funds remained after the payment of demands of the classes prior thereto. It therefore appears that they have two remedies at law whereby the plaintiffs could have obtained adjudications and allowances of their demands as of the fifth class. This, then, is an adequate remedy at law and as such precludes a suit in equity for the demands asserted in the bill unless the plaintiffs are entitled to have their claims allowed and paid prior to the fifth class. If they are entitled to priority of payment, the remedies suggested are neither

adequate nor complete and a court of equity will enter-
tain the bill.

As said before, the solution of this problem involves
the ascertainment of the character of the demand, for
while we have discovered that the claims asserted are
demands, we have not yet examined the precise nature
of such demands. While the cases have declared such
claims to be demands, we do not understand that the
courts have thereby intended, by the mere employment
of the word "demand" to convert a legitimate expense
of administration into a demand of the fifth or any other
class. We may denominate the claims here asserted as
demands or what not, but the fact remains nevertheless
that so much of the same as relates to attorneys' fees is
now and has been recognized, since Gamble v. Gibson, 59
Mo. 585 as, and in truth is, a legitimate and proper ex-
pense of administration. While the claim for compensa-
tion as real estate agents employed by the executor under
power in the will to dispose of the real estate is no doubt
as well a proper expense of administration, provided the
real estate is actually sold, such expenses of administra-
tion are and of right ought to be first or prior obligations
of the estate. This follows, of course, from the fact that
such expenses are contracted in protecting the estate and
otherwise rendering services whereby the estate is bene-
fitted in the interest of the creditors, heirs, legatees or
other persons interested therein. Such obligations are
burdens of the administration and the creditors must be
and are postponed to their payment. [Elstroth v. Young,
Admr., 88 Mo. App. 418; 11 Amer. & Eng. Ency. Law
(2 ed.), 1232-1240-1252; 2 Woerner's Amer. Law of Ad-
ministration, 756-766.] For it is certainly only fair and
equitable, where litigation which imperils the assets of
of an estate is defeated by the diligence of attorneys and
the assets of an estate thereby preserved for the bene-
fit of the creditors and heirs, that the attorneys who have
thus rendered the services for the protection of the fund

should be first paid, at any rate, should not be postponed to the fifth class, and the same would apply with equal force to a case of real estate agents employed by an executor who had the authority to contract such employment and they had rendered services whereby the estate was benefited. Such last mentioned expenses of administration, arising by virtue of beneficial services rendered to the estate, are certainly entitled to be paid first to creditors not excluding, however, the executor's compensation for the same services. The claims asserted in the bill are of this class and as such are entitled to be paid in priority to the creditors. It therefore appears that as there are no provisions in the administration law whereby they could have been classified in preference to the creditors and paid first to them, the bill presents a case in which the plaintiffs had no adequate remedy at law which could afford the measure of relief to which they are entitled. The case stated is of equitable cognizance and being such, it was not error to refuse the request for a jury. [Hagan v. Bank, 182 Mo. 319-345, 81 S. W. 171.]

We have examined the facts in proof and find substantial evidence tending to support the finding of the court on the first count, and the judgment will therefore be affirmed.

2. The cause of action set out in the second count is for commission alleged to have accrued to plaintiffs on account of a contract with the executor, Col. Lonergan, whereby they were employed to procure a purchaser for the lands which the executor was authorized by the will to sell. The proof shows that they had such a contract; that they performed on their part by procuring a satisfactory purchaser who was ready, able and willing to buy the same at a satisfactory price and that the executor declined to execute the deed because Dr. Pearson had succeeded to the interests of the heirs, as detailed in the statement of facts accompanying the opinion.

The allegation of the bill predicates the right of recovery against the estate and compensation therefor out of the funds thereof in the hands of the administrator *de bonis non,* upon the proposition that such services so rendered were beneficial to the estate. Now it is obvious that this proposition cannot be sustained on the evidence, for while under such circumstances the sale was made as between the agents and principal, within the meaning of the law, so as to have permitted the agents to recover their commission from the principal therefor (Sallee v. McMurray, 113 Mo. App. 253, 88 S. W. 157; Brown v. Smith, 113 Mo. App. 59, 87 S. W. 556), no actual sale of the lands was made by them, so that the estate could have been benefited by the services rendered. The fact is, no sale was made; the lands remained the property of the estate, and the estate was neither benefited nor injured by the services rendered but remained in statu quo. [Grove v. Reynolds, 100 Mo. App. 56, 71 S. W. 1103.] We do not rest the judgment of the court on this feature of the case, however. Aside from this, there are reasons which, in our opinion, have such influence over the facts in proof as to render it imperative upon this court to reverse the judgment on this count. We desire to say, however, that we have sought diligently for authority upholding the same but our labors have been in vain in view of the controlling decision of the Supreme Court in Jacobs v. Jacobs, 99 Mo. 427, 12 S. W. 457. Upon reflection, we are persuaded that the authority of that case controls the judgment of the court here. We hope we may be pardoned, however, for making some observations on what seems to us should be the law of this case on principle. Now, the will conferred upon the executor, in broad terms, power to sell the lands, and it was unquestionably within the power of the testator to authorize the executor to sell his real estate. It was likewise unquestionably within his power to leave the time, manner and terms of the contemplated sale to

his executor and it is true that under this power, the executor could have an abstract prepared, if necessary, to effectuate the sale, at the expense of the estate. He could have contracts and deeds prepared at the expense of the estate for the same purpose and likewise under this broad power conferred by the will, he could, if he deemed it essential and for the best interest of the estate in that behalf, in order to obtain a fair price for the lands, employ agents or brokers to procure a purchaser or purchasers or to aid and assist him thereabout, and contract to pay such agents or brokers commissions for rendering the services in aiding the sale and effectuating the power conferred by the will. In fact, it seems clear that the broad power conferred by the will necessarily implied in the executor, power incidental thereto to do any and all things reasonably essential to effectuate the power conferred. [Ingham v. Ryan, 71 Pac. (Colo. App.) 899; Dyer v. Winston, 77 S. W. (Tex. Civ. App.) 227; O'Brien v. Gilleland, 79 Tex. 602; McCown v. Terrell, 9 Tex. Civ. App. 74.] And, upon principle, it seems that under such circumstances, the contracts of the executor in that behalf entered into confessedly within the power conferred by the will, ought to obligate him in his representative capacity to render compensation therefor out of the estate. We know of no good reason on principle, why the estate should not ordinarily be held to respond to the contracts of its executor made within the power of the will. [Ingham v. Ryan, 71 Pac. (Colo. App.) 899; Wade v. Pope et al., 44 Ala. 690-695; Brown v. Evans, 15 Kan. 88; Bostwick v. Beach, 103 N. Y. 414-421; 9 N. E. 41.] In a case somewhat similar to this, it was adjudged by the Colorado Court of Appeals in Ingham v. Ryan, supra, that when lands were sold by an agent, acting for the executor, who derived his authority through the power in the will, as here, that such contract of the executor with the agent for which commissions far in excess of those allowed by the statute for the

sale of lands, was valid and could be enforced against the estate, nothwithstanding such statute prescribed the commissions to which executors and administrators are entitled generally for the sale of real estate. Be that as it may, however, we are confronted with what we regard as authority in point and controlling on this question, which sets the proposition at rest, so far as this court is concerned. [Jacobs v. Jacobs, 99 Mo. 427-428, 12 S. W. 457.] In that case, as here, the executrix was authorized by the will to sell certain lands. To effectuate this power, she employed agents. The agents having made the sales, for there were several, the executrix compensated them therefor and charged the same in her final settlement as a credit against the estate, and also charged the executrix's commission of five per cent on the money arising from such sales. The Supreme Court refused to allow the executrix credit for the amount paid to the real estate agents, holding that section 223, R. S. 1899, which allows administrators and executors "a commission of five per cent on personal property and on money arising from the sale of real estate," is the measure of the executor's compensation, and whether the duties prescribed by the will be performed by the executrix herself or her agents, there could be but one compensation therefore which is fixed at five per cent by the statute. Now, it is a well-settled rule with us that compensation of administrators and executors is not a matter within the discretion of the courts, but, on the contrary, is a matter fixed by the statute above referred to, and that the commission of five per cent allowed for their services is not earned by the administrator or executor until the services for which it is claimed have been fully performed. [Garrison v. St. L., etc., Trust Co., 77 Mo. App. 333; In re Boothe, 38 Mo. App. 456; Hawkins v. Cunningham, 67 Mo. 418; Hitchcock v. Mosher, 106 Mo. 582, 17 S. W. 638. Our statute above referred to does not purport to

allow the executor commissions on the value of the lands, which is a parcel of the estate, nor on the amount at which it might have been sold, but it allows him commission only when the lands have been actually sold and the five per cent is due him upon the amount of moneys arising from the sale. The language is: "A commission of five per cent . . . on the money arising from the sale of real estate." [Sec. 223, Ibid.] From the cases cited supra, it is obvious that the statute with respect to the subject of commissions is to be strictly construed for the benefit and in the interest of the estate and that no commissions are to be allowed and taken from the corpus of the estate except they are earned within the spirit or letter of the statute. The converse of the proposition that commissions will be allowed on such assets as he actually administered, is that no commission can be allowed on those enumerated which do not fall within the terms of the statute and do not come into his hands *virtute officii.* [11 Amer. & Eng. Ency. Law (2 Ed.), 1292.] The real estate was not sold. There was no money "arising from the sale of the real estate" and therefore the executor, Col. Lonergan, could have claimed no commissions therefor and the court would have no authority to allow such commissions to him. Now, the suit is not against Col. Lonergan nor is it against his estate, but it is against the estate of which he was executor, and seeks to recover therefrom, upon the proposition that the plaintiffs were the executor's agents, compensation which was not earned from the estate by their principal. Under the authority of Jacobs v. Jacobs, supra, the executor could not obligate the estate for commissions beyond the limitation of the statute, for the reason that the assets of the estate are not to be diminished by the payment of commissions not earned, under the statute supra. The executor himself had performed no services, nor had his agents under a contract with him which operated under

the limitations of the statute, to obligate the estate to pay commissions which are only affixed as obligations of the estate by actual sale of the lands, which was not accomplished in this instance. The statute and the adjudications theron were essentially a parcel of the contract between the parties and must be so considered by this court with reference to the claim asserted in the second count. For the reasons stated, the judgment on the second count will be reversed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.